NOPCO CHEMICAL DIVISION OF DIAMOND SHAMROCK CHEMICAL COMPANY, A UNIT OF DIAMOND SHAMROCK CORPORATION, PLAINTIFF-APPELLANT, v. BLAW-KNOX COMPANY, A CORPORATION OF NEW YORK, CENTRAL NEW YORK FREIGHTWAYS, INC., A CORPORATION OF NEW YORK, HARRISON WAREHOUSE CORPORATION, A CORPORATION OF NEW JERSEY, BELBY TRANSFER COMPANY, A CORPORATION OF NEW JERSEY, AND JOHN S. GEIGER & SONS, INC., DEFENDANTS-RESPONDENTS.

Argued May 10, 1971—Decided September 28, 1971.

Mr. *Albert E. Fershing* argued the cause for plaintiff-appellant (*Messrs. Shurkin, Hersh & Fershing,* attorneys; *Mr. Fershing,* on the brief).

Mr. *Augustus Nasmith* argued the cause for defendant-respondent Blaw-Knox Company (*Messrs. Carpenter, Bennett & Morrissey,* attorneys; *Mr. Nasmith,* of counsel).

Mr. *John Methfessel* argued the cause for defendant-respondent Central New York Freightways, Inc. (*Messrs. Gennet & Methfessel,* attorneys; *Mr. Methfessel,* on the brief).

Mr. *Neil Reiseman* argued the cause for defendant-respondent Harrison Warehouse Corporation (*Messrs. Schreiber and Lancaster,* attorneys, *Mr. Gerald W. Conway and Mr. Reiseman,* on the brief).

Mr. *Richard M. Icklan* argued the cause for defendant-respondent Belby Transfer Company (*Messrs. Lamb, Blake, Hutchinson and Dunne,* attorneys; *Mr. Icklan,* of counsel).

*Mr. Marvin A. Sachs* argued the cause for defendant-respondent John S. Geiger & Sons, Inc. (*Messrs. Feuerstein, Sachs and Maitlin,* attorneys; *Mr. Sachs,* on the brief).

· The opinion of the Court was delivered by

HALL, J. In this suit plaintiff, a purchaser of a large, heavy drying machine, sought to recover for concealed damage to the equipment, discovered after it had been delivered to plaintiff's place of business. The action was brought against the manufacturer and all carriers and bailees who successively, but unconnectedly, handled it until it reached its final destination. Although plaintiff's proofs established the nature of the damage and offered a theory of its cause, they did not demonstrate which particular defendant or defendants had inflicted it. The precise question before us is whether, in this type of transportation-bailee situation, these proofs were sufficient to withstand motions for involuntary dismissal at the end of plaintiff's case, and to shift the burden to each defendant to come forward with evidence concerning his part in the overall transaction, in an effort to clear himself and to throw responsibility upon another defendant, to the benefit of which plaintiff would be entitled.

The trial court dismissed the action as to all defendants on the ground that plaintiff had failed to sustain the burden of proof that any particular defendant was responsible for the damage and that defendants had no burden of going forward.[1] The Appellate Division affirmed, with Judge Carton dissenting. 113 *N. J. Super.* 19 (1971). Plaintiff appeals as of right by reason of the dissent. *R.* 2:2–1(a)(2).

■ The following essential particulars appeared in plaintiff's proofs. It ordered the piece of machinery from the manufacturer, defendant Blaw-Knox Company. The contract called for delivery to plaintiff f.o.b. Buffalo, New

---

[1] At the same time the court permitted withdrawal of cross-claims for contribution asserted by each defendant against the others, as well as a cross-claim for indemnity under an agreement filed by defendant Geiger against defendant Belby.

York. This meant that passage of title and risk of loss to plaintiff occurred when Blaw-Knox delivered the machine to plaintiff's carrier at its Buffalo factory.

The essential segment of the machine to dry and convert liquids into powder form consisted of two steam heated, chrome plated drums, which rotate on axles alongside each other in a horizontal plane. These drums were covered with heavy paper when the machine left the Blaw-Knox factory. This wrapping was not removed until the machine reached its intended position in plaintiff's plant in Harrison, New Jersey, when it was taken off by the field engineer of Blaw-Knox, preparatory to an operating test. This engineer then discovered that the chrome plating, previously concealed by the paper wrapping, had been abraded down to the underlying metal on some portions of the outer edges of the drums, thereby rendering the machine inoperable for plaintiff's intended purpose.

Plaintiff, by the opinion testimony of two engineer employees, offered a theory of the physical cause of the damage. The testimony was that, because cable marks were found on the axles or trunnions outside the end of the drums (which, though externally apparent, did not affect the operation of the machine), one or more of the defendants had lifted the machine by a crane with cables affixed to each end of the axles, without protective spreaders or other means to keep the cables from rubbing against the edge of the drums, and that the abrasion of the chrome plating at those points resulted therefrom.

Plaintiff's proofs concerning the conduct of the various defendants in handling the machine were derived from admissions in the pretrial order and answers to interrogatories, which were quite general. (Defendants' factual contentions in the pretrial order were not pinpointed, as they should have been, with reference to the details of how the machine was handled by each in relation to the damage, regardless of whether the same had been the subject of discovery.) Blaw-Knox, under its contract to deliver the machine to

plaintiff f.o.b. at its Buffalo factory, delivered it there to plaintiff's I. C. C. licensed, common carrier, defendant Central New York Freightways, Inc. (Central). Blaw-Knox used its crane and cables to place the equipment on Central's truck, with, it said, wooden blocks between the cables and the drums. The load was tied down on the truck by block chain and tarpaulin. No information was given on whether Blaw-Knox or Central did this work or how or where the chain was affixed.

Central delivered the load to plaintiff's consignee, defendant Harrison Warehouse Corporation (Harrison) at its warehouse in Harrison, New Jersey, for storage until plaintiff was ready for it at its plant. Harrison unloaded the dryer and placed it at a spot in the warehouse by its overhead crane and cables. When plaintiff was ready to receive the machine, it engaged defendant Belby Transfer Company (Belby) to transport it from the warehouse to the plant in the same town. Harrison moved and loaded the machine from its storage spot onto Belby's truck by overhead crane and cables. Harrison's answers to interrogatories gave no further details of these operations. Belby hired a crane from defendant John S. Geiger and Sons, Inc. (Geiger) for use in unloading the dryer and positioning it in plaintiff's plant. It is not clear whether employees of Geiger assisted in the operation; in our view this is immaterial since, if Geiger's employees did assist, Geiger would be Belby's agent and Belby would be responsible for their acts.

The unloading and positioning at plaintiff's plant by Belby was supervised and directed by one of plaintiff's engineers who testified concerning the details of it. After the dryer was positioned, plaintiff's employees connected necessary steam piping and electrical wiring before it was inspected and the plating damage discovered by Blaw-Knox's engineer. After on-site repairs were unsuccessful, plaintiff and Blaw-Knox agreed that the drums should be returned to the latter for replating. It is the cost thereof and additional transportation charges in connection there-

with paid by plaintiff's insurance carrier for which recovery is sought.

It is most probable that the damage occurred while the machine was in the possession of one or more of the defendants and that one or more of them are pecuniarily responsible for it.[2]

▇ Blaw-Knox had a contractual obligation, by virtue of an express performance warranty and seemingly by virtue of the implied warranties of merchantability and fitness for plaintiff's purpose (*N. J. S. A.* 12A:2–314 and –315), to deliver a machine to plaintiff's carrier at the Buffalo factory meeting the standards imposed by the contract of purchase. It would be liable if the damage occurred, by reason of its negligence or otherwise, before or during the loading on Central's truck. As both opinions of the Appellate Division indicated (113 *N. J. Super.* at 22–23 and 32–33), Blaw-Knox is not absolved by reason of having received a "clear receipt" from Central (nor is any other party in the chain who received a similar document), because the damage was concealed and not apparent.

▇ If the damage occurred while the machine was in the possession of Central, it would be liable absolutely at common law as a common carrier, unless the damage was caused by "act of God" or public enemies, by the inherent nature of the goods or by the fault of the shipper. *Jos. Toker Co., Inc., v. Lehigh Valley R. R. Co.*, 12 *N. J.* 608 (1953); see New Jersey Study Comment to *N. J. S. A.* 12A:7–309. Similarly, if the injury happened while the dryer was in the possession of Harrison, it would be liable in contract as a warehouseman-bailee if it failed "to exercise such care in regard to [the machine] as a reasonably care-

---

[2]While there was some slight attempt in the cross-examination of plaintiff's witnesses to suggest that the damage might have happened while its employees were making the steam and electrical connection —which would, of course, defeat plantiff's claim if established— there is clearly not enough in the state of the present record to have presented a jury question thereon.

ful man would exercise under like circumstances." *N. J. S. A.* 12A:7–204. And Belby (alone or with Geiger) would be subject to liability as a carrier and bailee if the damage occurred during its handling of the machine.

Plaintiff's dilemma is that, although almost certain to have a valid cause of action against one or more of the defendants, it does not know which one or ones and the practical difficulties of attempting to find out, because of this complex transportation and bailment chain, in order to be able to present affirmative proofs at trial, seem too great a burden to impose on it in a commonplace mercantile situation when the necessary facts are peculiarly within the knowledge of the respective defendants. *Cf. Menth v. Breeze Corporation, Inc.,* 4 *N. J.* 428, 437 (1950). Were the chain simpler, (*e. g.,* if the dryer had been shipped on a through bill of lading directly to plaintiff's plant through connecting carriers) and the circumstances slightly different (*e. g.,* if plaintiff could establish that the machine was not damaged when it was delivered by Blaw-Knox to Central), plaintiff could easily make out a case for recovery against one of the carriers for absolute liability at common law or under the Carmack Amendment (49 *U. S. C. A.,* § 20 (11)), or, at least, would be entitled to the benefit of common law presumptions requiring bailees to come forward with contrary evidence. See *Prosser, Law of Torts,* 214–215 (3rd ed. 1964) and authorities cited in dissenting opinion, 113 *N. J. Super.* at 31.

We are firmly of the view that the complexity of the situation should not leave plaintiff remediless or require it to sue each defendant separately and successively at its peril simply because there is no precise precedent in this State. *R.* 4:29–1 furnishes ample procedural authorization for a plaintiff in this type of situation, not knowing which of several defendants is responsible to it, to bring one suit against them all for determination of the guilty party. We thoroughly agree with Judge Carton that "reason and ordinary common sense dictate" that the dismissal

motions should have been denied and that the burden should be shifted to "those parties most likely to possess knowledge of the occurrence to come forward with the facts peculiarly within their possession." 113 *N. J. Super.* at 24. We concur in his reasoning, especially noting the following paragraph:

In large degree, plaintiff's dilemma arose because the equipment had to be shipped and handled by various unconnected concerns en route to its plant. This circumstance would render it unlikely that plaintiff, any more than any other purchaser of merchandise shipped by carrier and stored by warehousemen, would have acquired or could readily obtain information as to when the alleged damage occurred or as to what or who caused it. Discovery procedures, of course, are available, but have practical limitations peculiar to the transportation sector of the commercial world. Moreover, elaborate and expensive discovery methods should not be a prerequisite to a cause of action in all situations. Would not almost the precise situation which confronted the trial court be presented if the item damaged in transit were a household refrigerator, a television, or even a radio? Could it reasonably be argued that in order for the purchaser to recover he ought to be required to take the depositions of all of the persons who successively handled the product? (113 *N. J. Super.* at 30).

This view of requiring defendants, in a transportation-bailee situation, sued in the alternative when plaintiff is in doubt as to which is liable, to come forward with explanatory evidence, finds precedent in other jurisdictions. *General Electric Company v. Pennsylvania Railroad Co.,* 160 *F. Supp.* 186 (*W. D. Pa.* 1958); *S. & C. Clothing Co. v. United States Trucking Corp.,* 216 *App. Div.* 482, 215 *N. Y. S.* 349 (1926). *Cf. Thermoid Rubber Co. v. Baird Rubber & Trading Co.,* 124 *Misc.* 774, 209 *N. Y. S.* 277 (Sup. Ct. 1925); *Yatter v. Mathies,* 139 *Misc.* 26, 246 *N. Y. S.* 548 (Sup. Ct. 1930).

We conclude there should be a new trial as to all defendants. Their respective cross-claims should, of course, be reinstated if they so desire. The new trial must be preceded by a new, thorough pretrial conference and order, which will spell out in detail the factual contentions of each de-

fendant as to its handling of the machine and the cause of the damage. We think something ought also to be said beyond the indications of Judge Carton's opinion with respect to the course of the new trial, for the guidance of counsel and the court.

Plaintiff will make out a *prima facie* case by proving, as it did in the first trial, the nature of the damage, the identity of the respective defendants who handled it, and the general capacities in which they did so. It is not required to offer opinion testimony as to the precise cause of the damage, as was done at the first trial, but may do so if it chooses. We are of the opinion that, if it does so on its own case, the theory thereby asserted does not become binding in the sense that any defendant not includible therein is entitled to a dismissal at the end of plaintiff's case or that plaintiff may not have the benefit of evidence of some other cause presented in the proofs of any defendant. (We consequently disagree with the statement in the majority opinion of the Appellate Division, 113 *N. J. Super.* at 23, that plaintiff's claim against Blaw-Knox for breach of warranty required dismissal because its own proofs asserted the damage was the result of abrasion by cable while the machine was in transit.) The situation is analogous to a tort action in which a plaintiff relies on *res ipsa loquitur* but also introduces direct proof of defendant's negligence on its case. The general rule in such a situation is that the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant does not deprive the plaintiff of the benefit of *res ipsa loquitur.* Prosser, *Law of Torts,* 236 (3rd ed. 1964); *Vespe v. DiMarco,* 43 *N. J.* 430, 436–437 (1964).

At the conclusion of plaintiff's case, the burden will shift to each defendant successively, commencing with Blaw-Knox, to come forward with proofs of its particular part in the overall transaction in explanation or exoneration of its conduct with relation to the damage. Such evidence may include its view of the cause of the damage, which may, of

course, differ from any suggested by plaintiff, and may seek to cast responsibility upon another defendant or even upon the plaintiff itself. Plaintiff is entitled to the benefit of all such proofs as against any defendant. If any defendant fails to offer proofs, it risks a finding against it on the evidence in the case.

At the conclusion of the entire case, the court may, upon consideration of all the proofs and legitimate inferences therefrom in the light most favorable to plaintiff, direct judgment in favor of any defendant or defendants against whom no evidence or inference of responsibility exists.[3]

The case will go to the jury as to those defendants who remain for its determination as to the party responsible for the damage, under an instruction that, while the burden of persuasion remains on plaintiff, that burden may be sustained on the basis of all the evidence and legitimate inferences therefrom. The liability aspect of the case can probably best be submitted to the jury on special questions directed to the cause of the damage and which defendant or defendants were responsible therefor. *R.* 4:39–1. The cross-claims will be subject to court determination on the jury's answers to the special questions.

One other aspect of the situation which cropped out at the trial should be mentioned. When the repaired drums were returned by Blaw-Knox to plaintiff, some new damage to the plating was discovered, which did not exist when the dryer was first delivered and admittedly was entirely unconnected with the original damage. This was repaired at plaintiff's plant at its expense. While some incidental testimony with respect to it crept into the trial, no claim there-

---

[3]Defendants Belby and Geiger urge that plaintiff's own proofs exonerated them from responsibility because plaintiff's engineer, who supervised their delivery of the dryer to plaintiff's plant, testified that it was properly lifted and positioned and that the acts of these defendants did not cause the damage. If the evidence at the new trial is to the same effect and no other defendant inculpates these parties, they will be entitled to a direction in their favor at the conclusion of the case.

for was asserted in the complaint or in the pretrial order contentions. No present defendant other than Blaw-Knox had anything to do with it. We are satisfied that any claim for recovery with respect thereto is not properly involved in the present case and should not be dealt with on retrial, absent amendment of the pleadings.

The judgments of the Appellate Division and the trial court are reversed and the case is remanded to the Law Division for a new trial consistent with this opinion.

All concur.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.