120 N.J. Super. 529 (1972)
295 A.2d 363
AGNES MAGNER, PLAINTIFF-APPELLANT,
v.
BETH ISRAEL HOSPITAL AND GEORGE C. PECK, DEFENDANTS-APPELLEES.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1972.
Decided October 4, 1972.
*531 Before Judges COLLESTER, LEONARD and HALPERN.
Mr. Thomas J. Osborne, Jr. argued the cause for appellant (Messrs. Vaccaro and Osborne, attorneys).
Mr. Gerald E. Monaghan argued the cause for respondent George C. Peck (Messrs. Breslin and Monaghan, attorneys).
Mr. Edward E. Kuebler filed a brief and appeared for respondent Beth Israel Hospital.
The opinion of the court was delivered by HALPERN, J.A.D.
This is a medical malpractice suit by plaintiff against defendants Peck, a plastic surgeon, and Beth Israel Hospital. At the close of plaintiff's proofs the trial judge dismissed all claims against Beth Israel Hospital. At oral argument plaintiff and Peck stipulated that the appeal as to the hospital be dismissed with prejudice. The present appeal by plaintiff, for all practical purposes, is from the judgment entered on the jury's verdict of no cause for action in Peck's favor, based on the grounds that the trial court erred in denying her motions for a directed verdict, for judgment n.o.v. or, in the alternative, a new trial.
A distillation of the undisputed facts, as testified to by Peck, indicates that plaintiff was admitted to the Beth Israel Hospital as Peck's patient for three operative procedures by him: (a) to excise and suture a scar on her forehead; (b) debride scars on her cheek, and (c) to remove a mole or lesion on her neck with a Bovie Electric Cautery which emits a spark when a foot pedal is activated by the surgeon. After plaintiff was anesthetized Peck personally prepped her for the operation by wiping down or painting *532 the areas involved with gauze soaked in pure alcohol and draping them with sterile towels. He first excised and sutured the scar on her forehead, which took about 10 to 15 minutes. He then debrided the scars on her cheek, which took about 10 minutes. Finally, as he turned on the electric current to utilize the cautery and neared the neck area with it to commence removing the lesion, "* * * a spark emitted from the needle to the skin and there was a flash over the entire area causing a burn of this area." It was to recover for the resulting injuries that this suit was commenced.
Peck further testified it was the alcohol that started the fire, and although he knew alcohol was inflammable he had used it as a prep in over 3,000 operations without any untoward result. It was his opinion, corroborated by his medical expert, Dr. Frederick Coester, that it was standard operating procedure to use alcohol as a prepping agent if you wait at least ten minutes for its fumes to evaporate. Having waited beyond the prescribed time, he could not explain the flash fire which resulted. He acknowledged the existence of other nonflammable preps, and frankly admitted that ever since plaintiff's injury he has not used alcohol as a prep.
Plaintiff's medical expert, Dr. Marvin A. Stevens, testified that Peck's use of alcohol as a prep was a deviation from approved medical standards. He was of the opinion that the humidity in the operating room, or the towels draped over the operative area, could have affected the rate of the alcohol's evaporation. In any event, it was Peck's obligation to be sure the operative area was safe and dry before proceeding. While Dr. Coester testified that Peck's use of an alcohol prep was not a deviation from approved medical standards if ten minutes were allowed to elapse after application, he normally used non-alcoholic preps. He agreed with Dr. Stevens that it was Peck's responsibility to be sure the operative area was dry, and that the time it takes for alcohol to evaporate varies according to existing conditions.
*533 In light of these facts the trial judge charged the jury, based on the doctrine of res ipsa loquitur, that they could infer Peck to have been negligent, although not required to do so, if they determined that (1) the incident here involved ordinarily does not occur in the absence of negligence; (2) it was caused by an instrumentality within the exclusive control of Peck, and (3) it was not due to any voluntary act or neglect on plaintiff's part. This instruction was in line with reported New Jersey medical malpractice cases. See Sanzari v. Rosenfeld, 34 N.J. 128 (1961); Terhune v. Margaret Hague Maternity Hospital, 63 N.J. Super. 106 (App. Div. 1960); Becker v. Eisenstodt, 60 N.J. Super. 240 (App. Div. 1960); Toy v. Rickert, 53 N.J. Super. 27 (App. Div. 1958); Steinke v. Bell, 32 N.J. Super. 67 (App. Div. 1954); Gould v. Winokur, 98 N.J. Super. 554 (Law Div. 1968), aff'd 104 N.J. Super. 329 (App. Div. 1969). As indicated, the doctrine permits an inference of negligence, but does not mandate it even though, as here, Peck was unable to explain the cause of the accident. The doctrine, when applicable, is used to avoid a dismissal at the close of a plaintiff's proofs. Sanzari, supra, at 141.
We find it difficult, if not inadvisable, to instruct juries in terms of legal doctrines such as res ipsa  this is especially true in medical malpractice cases where the facts differ so widely from other types of negligence or products liability cases, and expert medical testimony is normally required. Instructing juries as to permitted inferences, presumptions, prima facie cases, burden of proof, shifting of burden of proof, as is often done in non-medical malpractice cases, even though the same principles may be applicable, rarely is helpful to a jury in a medical malpractice case  particularly where no explanation for the accident is given. See, for example, Prosser, Law of Torts (4th ed.) at 231-235; 1 Louisell and Williams, Medical Malpractice, § 1503; Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 604-608 (1958), and Vespe v. Di Marco, 43 N.J. 430 (1964). This *534 difficulty was recognized by the court when confronted with a case involving an allowable inference of negligence. In Rose v. Port of New York Authority, 61 N.J. 129 (1972), Justice Mountain pointed out:
Traditionally an allowable inference of negligence on the part of a defendant is justified if (a) the occurrence itself ordinarily bespeaks negligence, (b) the instrumentality was within defendant's exclusive control, and (c) there is no indication that the injury is attributable to plaintiff's voluntary act or neglect. Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 605-607 (1958); Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269-273 (1958). Whether we refer to this as the rule of res ipsa loquitur or simply say that the circumstances are such as to give rise to an inference that defendant was negligent, is perhaps no great matter. Here the occurrence bespeaks negligence. [at 136]
We have carefully reviewed this record in the light of Dolson v. Anastasia, 55 N.J. 2 (1969), and Franklin Discount Co. v. Ford, 27 N.J. 473 (1958), and are satisfied there has been a miscarriage of justice under the law requiring a new trial. The inescapable facts are that plaintiff suffered injuries while unconscious during surgery from an occurrence which by itself bespeaks negligence. Peck was in exclusive control of her body and the instruments which had the potentiality of causing injury if not properly used. The greater portions of her body that suffered injury were not involved in the surgery and were healthy prior thereto. These uncontroverted facts, standing alone, not only make the res ipsa doctrine applicable, but enable a jury to conclude from common experience that plaintiff would not have been injured if proper care and skill had been used. See State v. Weiner, 41 N.J. 21, 25 (1963) and Terhune, supra, 63 N.J. Super. at 111. Under the existing circumstances Peck had the burden of coming forward with evidence to explain what happened. This he failed to do. The gist of his testimony on this subject is best illustrated by the following question and answer given by him on cross-examination
*535 Q. Well, what do you attribute this fire to?
A. I have absolutely no idea.
Being mindful of the opinions of our Supreme Court that under the existing circumstances, even though Peck offered no explanation for the accident, a jury question is presented, we can do no more than require a new trial where we conclude a manifest injustice has resulted. We think it appropriate, however, to point out that other jurisdictions and legal authorities have gone further. They have concluded that in medical malpractice cases, under circumstances analogous to the facts in this case, the trial court should direct a verdict on liability in plaintiff's favor because the inference of negligence is so clear and strong that fair and reasonable minded men could not fail to accept it. It is only when a surgeon's explanation raises fact questions, over which reasonable men can be expected to differ, that the issue of fault should be left for the jury's determination. See Clark v. Gibbons, 66 Cal.2d 399, 426 P.2d 525, 58 Cal. Rptr. 125 (Cal. Sup. Ct. 1967); Dierman v. Providence Hospital, 31 Cal.2d 290, 188 P.2d 12, 13 (Cal. Sup. Ct. 1948); Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035, 1039 (10 Cir.1969); Prosser, Law of Torts (4th ed.) at 228-235, and 1 Louisell and Williams, Medical Malpractice, §§ 15.02 to 15.08, at 465-484, and cases cited therein.
Since a new trial is required, we deem it advisable to indicate that there is no merit to plaintiff's contention that the trial court erred in dismissing the counts in her complaint charging breach of warranty and strict liability. These doctrines may be applicable in commercial transactions but not to the medical or dental professions. See Newmark v. Gimbel's, Inc., 54 N.J. 585 (1969); Magrine v. Krasnica, 94 N.J. Super. 228 (Law Div. 1967), aff'd sub nom. Magrine v. Spector, 100 N.J. Super. 223 (App. Div. 1968), aff'd 53 N.J. 259 (1969).
Reversed and remanded for a new trial.