134 N.J. Super. 1 (1973)
338 A.2d 35
HENRY ANDERSON, PLAINTIFF-APPELLANT,
v.
DR. HAROLD SOMBERG, ST. JAMES HOSPITAL, REINHOLD-SCHUMANN, INC., A CORPORATION, LAWTON INSTRUMENT COMPANY, A CORPORATION, AND ALCON LABORATORIES, A CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1973.
Decided July 10, 1973.
*2 Before Judges CARTON, MINTZ and SEIDMAN.
Mr. Ira J. Zarin argued the cause for appellant (Messrs. Zarin and Maran, attorneys).
Mr. James T. Clare argued the cause for respondent Harold Somberg (Messrs. Shanley & Fisher, attorneys).
Mr. Edward E. Kuebler argued the cause for respondent St. James Hospital.
*3 Mr. John I. Lisowski argued the cause for respondent Reinhold-Schumann, Inc. (Messrs. Morgan, Melhuish, Monagahan, McCoid & Spielvogel, attorneys; Mr. James L. Melhuish, of counsel).
Mr. Donald L. Berlin argued the cause for respondent Lawton Instrument Company (Messrs. Lieb, Teich & Berlin, attorneys).
PER CURIAM.
Plaintiff appeals from a judgment entered in favor of all defendants following a jury trial. His motion for a new trial was denied.
On November 14, 1967 plaintiff was operated on by defendant Dr. Somberg at St. James Hospital (hospital) for the removal of an intravertebral disc at the L4-5 level. During the course of the surgery the cup of one of the jaws of the metal pituitary rongeurs (forceps) being used to remove disc material broke off and remained within the surgical cavity. Dr. Somberg testified that he immediately went into the cavity with a straight pituitary and felt metal hitting metal. He tried grasping but he could not come up with the cup. After about 30 minutes of attempting to recover the cup, and no longer being able to feel metal, Dr. Somberg decided that the best course to follow at this point would be to sew up plaintiff, which he did.
The instrument in question was an angulated pituitary rongeur manufactured by defendant Lawton Instrument Company (Lawton) who sold it to defendant Reinhold-Schumann, Inc. (Reinhold). Reinhold, in turn, sold the instrument to the hospital on or about August 25, 1963. It appears that the pituitary rongeur was used only in laminectomies, perhaps five times a year. The instrument was kept in a special drawer because it was rarely used. Plaintiff's basic complaint against Dr. Somberg is for malpractice. Dr. Somberg testified that he made no inspection of the rongeur prior to the surgery. However, he stated that in the course of the surgery when the instrument was handed *4 to him by the hospital nurse he made an observation of it to see if the cup or jaw of the rongeur was present, that the edges met and also that the scissor-like jaws of the forceps closed and opened. When he held his hand out for the instrument during surgery his left hand at that time was inserted deep within the wound to hold the nerve root retractor in place on the nerves. He stated: "The inspection is limited to mobility of the handle and  I don't have to look at the handles to feel the degree of resistance. I look at the cups and see that the edges meet. There was no other component of my examining the instrument beyond those two aspects." This examination took only a few seconds and he noticed nothing unusual about the instrument.
Dr. David Graubard, whose specialty is general surgery, testified as an expert for plaintiff. He stated that if the particular rongeur was used properly, i.e., avoiding excessive strain and tortion or twisting, and was not defective, it would not break.
Plaintiff's claim against the hospital was apparently predicated upon negligence in the maintenance and inspection of the rongeur. Plaintiff's claim against Lawton and Reinhold was essentially predicated upon a breach of implied warranty of merchantability. John Carroll, an expert witness for Lawton, testified that he examined the instrument in question, performed laboratory tests upon it and found no evidence of faulty workmanship. He was of the opinion that the failure was a result of the instrument being over-strained. He said that the pattern of fracture of the rongeur indicated that the strain was caused by a twisting motion (which Dr. Graubard testified should be avoided in the use of this instrument). Carroll said that the strain could have occurred during the course of one operation or many operations. He also indicated that if the instrument had previously suffered the strain, it could thereafter break even through normal use. He could not pinpoint the time when the instrument was strained.
*5 Testimony was presented regarding the injury to plaintiff as a consequence of the unfortunate incident to which we have alluded. Dr. Somberg performed a subsequent operation for the sole purpose of removing the metal fragment that had remained in plaintiff's back.
The trial judge instructed the jury as follows:
The right of the defendants to have the plaintiff bear the required burden is a substantial one and not a mere matter of form. This burden may be sustained, however, on the basis of all of the evidence in this case and the legitimate inferences to be drawn from it. And in this connection you may consider that the defendants were the only ones shown to have any relationship with the pituitary rongeur which broke during the course of the operation. And you may infer that the breaking was attributable to dereliction on the part of one or other of the defendants in this case.
At the conclusion of the trial the judge submitted special interrogatories to the jury. The jury found that the injuries and damages suffered by plaintiff were not proximately caused by the negligence or malpractice of the doctor; that they were not proximately caused by the negligence of the hospital in inspecting and furnishing the instrument to Dr. Somberg, and that the rongeur was not defective  that is, it was reasonably fit for the ordinary purpose for which it was sold and used.
We have carefully reviewed the record in the light of Dolson v. Anastasia, 55 N.J. 2 (1969), and are satisfied that there has been a miscarriage of justice under the law requiring a new trial. The inescapable facts are that plaintiff suffered injuries while unconscious during surgery from an occurrence which by itself bespeaks liability on the part of one or more of the defendants. That portion of the charge to which we have alluded was, in our considered judgment, inadequate in view of the testimony adduced at the trial.
Reason and common sense dictate that the jury additionally should be charged that under the peculiar circumstances of this case the occurrence itself indicates liability on the part of one or more of the defendants, and that the *6 burden should be shifted to defendants as they are most likely to possess knowledge of the cause of the accident. Each defendant has the duty to come forward with explanatory evidence. NOPCO Chemical Div. v. Blaw-Knox Co., 59 N.J. 274, 282-283 (1971). Cf. Magner v. Beth Israel Hospital, 120 N.J. Super. 529, 534 (App. Div. 1972).
For the reasons expressed the matter is reversed and remanded for a new trial as to all defendants.
SEIDMAN, J.A.D.
There is no doubt that the judgment entered in favor of defendants must be reversed and the matter remanded for a new trial. I am convinced that the charge to the jury was so structured that they may well have been misled or confused thereby.
But I am unable to agree with that portion of my colleagues' opinion which states that the jury should be charged that in the "peculiar circumstances of this case the occurrence itself indicates liability on the part of one or more of the defendants, and that the burden should be shifted to defendants as they are most likely to possess knowledge of the cause of the accident." Such charge, in effect, instructs the jury that someone is liable and mandates that they return a verdict in favor of the plaintiff and against one or more of the defendants. This, in my view, is a misconception of Nopco Chemical Div. v. Blaw-Knox Co., 59 N.J. 274 (1971). There is a significant difference between what a plaintiff is required to establish in a case of this nature in order to withstand a motion for dismissal and what a jury must consider in order to return an appropriate verdict.
The import of Nopco Chemical Div. v. Blaw-Knox Co., supra, 59 N.J. at 282-283, is that where a plaintiff has a valid cause of action against one or more defendants, but does not know which one or ones, and, because of the circumstances, cannot present affirmative proofs at trial, and the necessary facts are peculiarly within the knowledge of the respective defendants, reason and common sense dictate that the burden should shift to those parties most likely to *7 possess knowledge of the occurrence to come forward with the facts. The court said:
At the conclusion of plaintiff's case, the burden will shift to each defendant successively, commencing with Blaw-Knox, to come forward with proofs of its particular part in the overall transaction in explanation or exoneration of its conduct with relation to the damage. Such evidence may include its view of the cause of the damage, which may, of course, differ from any suggested by plaintiff, and may seek to cast responsibility upon another defendant or even upon the plaintiff itself. Plaintiff is entitled to the benefit of all such proofs as against any defendant. If any defendant fails to offer proofs, it risks a finding against it on the evidence in the case.
At the conclusion of the entire case, the court may, upon consideration of all the proofs and legitimate inferences therefrom in the light most favorable to plaintiff, direct judgment in favor of any defendant or defendants against whom no evidence or inference of responsibility exists.
The case will go to the jury as to those defendants who remain for its determination as to the party responsible for the damage, under an instruction that, while the burden of persuasion remains on plaintiff, that burden may be sustained on the basis of all the evidence and legitimate inferences therefrom. * * * [at 284-285]
This is akin to the doctrine of res ipsa loquitur, which, in a negligence case, traditionally allows an inference of negligence on the part of a defendant if (a) the occurrence itself ordinarily bespeaks negligence, (b) the instrumentality was within defendant's exclusive control, and (c) there is no indication that the injury is attributable to plaintiff's voluntary act or neglect. Rose v. Port of New York Authority, 61 N.J. 129, 136 (1972).
The point to be stressed is that, whether the doctrine to be applied is that of res ipsa loquitur, or the broader concept that the circumstances may be such as to give rise to an inference of fault or liability, proof of the occurrence merely protects a plaintiff against having his cause dismissed. He is entitled to go to the jury on that proof alone. It does not mean, however, that he must recover, unless the inference of fault on the part of one or more of the defendants is so clear and strong that fair and reasonable minded men could not fail to accept it, in which case, of course, the trial court *8 should direct a verdict of liability against the culpable defendant or defendants. See Magner v. Beth Israel Hospital, 120 N.J. Super. 529 (App. Div. 1972).
In this case, as in Magner, the fact is that plaintiff suffered an injury while unconscious during surgery from an occurrence which bespeaks negligence, or a defective surgical instrument, or both, and from which the jury could conclude from common experience that plaintiff would not have been injured if proper care and skill had been used, or if the surgical instrument had not been defective. The burden thus shifts to each defendant to come forward with proof of his or its particular part in the overall occurrence in explanation or exoneration of his or its conduct. It then becomes the task of the jury, on proper instructions, to determine whether in the final analysis the inference of fault outweighs the explanation.
To charge the jury that the occurrence indicates liability on the part of one or more of the defendants, rather than that fault may be inferred therefrom, is incompatible with the opportunity accorded each defendant to present facts in explanation or exoneration, since it is conceivable the jury might find the explanatory proofs offered by each defendant acceptable. The view of my colleagues that the jury must find one or more of the defendants liable does not explain on what basis or by what standards such determination is to be made, other than by random selection.