775 A.2d 97 (2001)
Joseph LUCIA, Executor of the Estate of Karen Keller, Deceased, and Joseph Lucia, Individually, Plaintiffs-Appellants/Cross-Respondents,
v.
MONMOUTH MEDICAL CENTER, Louis Zinterhofer, M.D., Cyril Arvanitis, M.D., James Royce, M.D., Cynthia Sparer, and Rhona Alkana, M.D., Defendants-Respondents/Cross-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted April 25, 2001.
Decided June 4, 2001.
*99 Drazin & Warshaw, attorneys for appellants/cross-respondents (Anthony V. Locascio, Red Bank, on the brief).
Ronan, Tuzzio & Giannone, attorneys for respondents/cross-appellants (Mary Ann Nobile and Lauren H. Walter, Tinton Falls, on the brief).
Before Judges BAIME, CARCHMAN and LINTNER.
*98 The opinion of the court was delivered by CARCHMAN, J.A.D.
Louis Zinterhofer, M.D., a pathologist and Chairman of the Pathology Department at defendant Monmouth Medical Center (the hospital), misread specimen slides of a lesion removed from the leg of plaintiff Karen Keller.[1] Zinterhofer's opinion that the specimen revealed a benign intradermal nevus proved inaccurate, as three years later, Zinterhofer examined a new specimen which revealed subcutaneous metastatic malignant melanoma. Upon reviewing the earlier specimen, Zinterhofer revised his apparent misdiagnosis to "focally ulcerated malignant melanoma." *100 Although Keller underwent additional surgeries and treatment at Memorial Sloan Kettering Hospital to remove and control subsequent metastasises, the cancer ultimately spread throughout her body. She died in April 1995, at the age of forty-seven.
Plaintiff, while alive, filed an action against the hospital, Zinterhofer, and Cyril Arvantis, M.D., the surgeon who removed the lesion, seeking damages based on alleged medical negligence. After, Keller's death, multiple amendments to the complaint were filed to substitute plaintiffs and join as party defendants various administrative personnel and a pathology resident, Rhona Alkana, who was present when Zinterhofer read the original slide. Zinterhofer settled with plaintiff, and after dismissals as to Alkana and the other parties, plaintiff proceeded against the hospital. A jury found in favor of the hospital. Plaintiff appeals, and we affirm.
On appeal, plaintiff raises a number of issues and contends that the trial judge erred by: (1) dismissing plaintiff's claims against Alkana and failing to charge the common knowledge doctrine against both Alkana and the hospital; (2) failing to shift the burden of proof to defendants to disprove negligence; (3) failing to cure prejudice caused by defendants' discovery violations and cross-examination of plaintiff's expert; (4) denying plaintiff's request to admit an undated newspaper advertisement and to charge the jury that the hospital's duty of care was that of a specialized hospital; and (5) not permitting plaintiff to proceed on a vicarious liability theory against the hospital despite plaintiff's settlement with Zinterhofer. Defendants Alkana and the hospital cross-appeal and assert that they were entitled to a dismissal because plaintiff failed to serve a timely expert report and to establish proximate cause and damages prior to trial.
We address plaintiff's claims seriatim.
The basic theory of plaintiff's case was that the 1990 misdiagnosis of her slides resulted from the hospital's failure to have a departmental policy in place requiring a second pathologist to re-read the slides as a matter of course or the employment of a slide-spacing system to separate read slides from unread slides or one patient's slides from another. Fault was attributed to Alkana for failure to ensure that Zinterhofer read and attributed the slides to the proper patient, in this case plaintiff.
There is no question that Zinterhofer misread the 1990 slides. The experts produced by both plaintiff and defendants agreed that the applicable standard of care for any hospital pathology department, whether average or specialized, would not specifically require the routine use of slide-spacing techniques or dual-pathologist readings of all pigmented nevi slides as a matter of course in order to reduce the chance of human error. The experts also established that a pathology resident then assisting a supervising pathologist generally had no duty of care to ensure that the pathologist reviewed and reported the proper patient slides. To summarize the relevant proofs as to this issue, while a resident may have read a slide in tandem with the pathologist, the resident was not responsible for double-checking the pathologist's work.
At the close of plaintiff's case, Judge Chaiet granted defendants' motion to dismiss plaintiff's claims against the hospital's administrative personnel and Alkana. The judge concluded that plaintiff failed to present any expert testimony suggesting that Alkana had a duty of care to ensure that Zinterhofer chose and examined the correct patient slides.
*101 The judge also rejected plaintiff's argument that the jury should have been permitted to consider defendants' culpability under the "common knowledge" theory that no expert testimony was required because whether Alkana should have checked to ensure that Zinterhofer read the proper slides was within the average ken of the jury:
[PLAINTIFF'S COUNSEL]: ... plaintiff has always asserted through a common knowledge doctrine that there should have been some way where the resident says to the doctor, do we have the right slide? And in that vein we have argued a double check system.
... I think that that's within the common province of the jury to think whether or not someone should have double checked that they were looking at the right slide.
THE COURT: And we're here to, there's been no expert testimony in regard to the resident in terms of a double checking. You've heard that testimony. And the fact that the resident did or did not check ... the slide doesn't go to the standard in this case, which your expert has established and which is the issue that the jury will have to resolve in this case.
We don't really know what the resident did or didn't do in this particular case. Because she doesn't remember.
[PLAINTIFF'S COUNSEL]: That's correct. The defense expert tells us what the resident should have done in the case. And what they do at his hospital.
THE COURT: Right. Okay.
[PLAINTIFF'S COUNSEL]: But we're not making this argument as to the resident for you to bring the resident back in. This argument is strictly as to the policies and procedures that should have been in effect.

THE COURT: And that's what the case is about.
[PLAINTIFF'S COUNSEL]: Correct.
THE COURT: All right. So, your motion is?
[DEFENSE COUNSEL]: My motion is that the testimony, the plaintiff[ ] should not be able to make the argument to the jury that there was negligence on the part of the resident or the hospital as far as double checking the pathologist when he picks up the slide....
THE COURT: All right. I really think you're probably correct there. That I wouldn't allow them to argue that the standard has been violated because of what the resident did or did not do. All right? Okay....
....
... All right. Anything else?
[PLAINTIFF'S COUNSEL]: Nothing further, Your Honor.
[ (emphasis added).]
At the close of defendants' case, plaintiff took exception to the absence of a jury charge on common knowledge, not as applied to Alkana, but as applied to the hospital:
[PLAINTIFF'S COUNSEL]: And I have no problem with the charge as worded with the exception of an issue you've already ruled out, which is our common knowledge doctrine. You know, which I understand the Court has already ruled. I just want to take an exception to that aspect.
THE COURT: Okay. All right. Common knowledge as it applies to the resident.
[PLAINTIFF'S COUNSEL]: No, not as to the resident. I think that there's a certain aspect of the common knowledge *102 doctrine as it applies to the hospital. You know, if you have an employee and there's no program in effect to cross check to see, know you have a slide number, you know you're reading off that. And that, that doesn't take an expert. That's within our common knowledge.
THE COURT: I disagree. All right? I mean, really the issue is should a pathologist have two pathologists reading every report he does? Should there be a spacing system? And I think that that's not within the common knowledge of every day people.
[ (emphasis added).]
This refusal to charge "common knowledge" forms plaintiff's claim of error. In support of her multi-faceted argument that Judge Chaiet erred in dismissing Alkana from the case, and in failing to charge the common knowledge doctrine as to both Alkana and the hospital because no expert testimony was required to establish that defendants had the duty to ensure "that the slide the pathologist view[s] is the correct one .... by simple communication between the hospital to require it, and the resident to acknowledge and perform it," plaintiff relies on Jenoff v. Gleason, 215 N.J.Super. 349, 521 A.2d 1323 (App.Div.1987).
We first observe that plaintiff is estopped from arguing that the common knowledge doctrine would apply to establish Alkana's breach of any independent duty as a resident to double-check Zinterhofer's proper matching of Keller's slides and paperwork, as it appears from counsel's representations to the trial judge that plaintiff explicitly waived that argument as to Alkana, and preserved it, if at all, only as to the hospital. Cf. Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 503-04, 677 A.2d 705 (1996) (noting that "[t]he doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error"); Pressler, Current N.J. Court Rules, comment 2.5 on R. 2:10-1; comment 13.5 on R. 4:5-4 (2001) (discussing invited error and judicial estoppel); McKenney v. Jersey City Med. Ctr., 330 N.J.Super. 568, 595-96, 750 A.2d 189 (App.Div.), certif. granted, 165 N.J. 607, 762 A.2d 221 (2000) (noting that parties must generally adhere to the theory of law pursued at trial, and will not be heard to complain of a jury instruction submitted on a theory which apparently satisfied the appellant without objection); Pressler, supra, comment on R. 2:6-2 (discussing the estoppel effect of issues waived, conceded, or not raised below). Moreover, the record does not clearly indicate what portion of the jury charge, if any, plaintiff may have objected to when given the opportunity after the charge, but rather indicates that plaintiff "perceived the alleged error[s] to be of no moment," State v. Swint, 328 N.J.Super. 236, 256-57, 745 A.2d 570 (App.Div.), certif. denied, 165 N.J. 492, 758 A.2d 651 (2000), and that the absence of those charges now complained of was not "clearly capable of producing an unjust result," R. 1:7-2 and comment 3; R. 2:10-2.
Even assuming that plaintiff preserved the common knowledge argument as to both defendants and properly objected to the absence of a common knowledge charge, his reliance upon Jenoff is nevertheless misplaced. Ordinarily, medical practitioners' standards of care and deviations therefrom must be established by expert testimony, as average jurors lack the "`requisite special knowledge, technical training and background'" to make those determinations without an expert's assistance. Kelly v. Berlin, 300 N.J.Super. *103 256, 264, 692 A.2d 552 (App.Div.1997) (quoting Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985)); Estate of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469-70, 734 A.2d 778 (1999). Under the common knowledge doctrine, the absence of such testimony "is not invariably fatal" to a medical malpractice action if there is other testimony from which the factfinder can determine the applicable standard of care and whether it was violated. Jenoff, supra, 215 N.J.Super. at 357-68, 521 A.2d 1323. The common knowledge doctrine is appropriately applied only in those professional malpractice cases where the common knowledge and experience of ordinary lay persons would enable a jury to conclude without expert testimony that a standard of care applied and was breachedthat is, where "the mistake was obviously the result of negligence." Chin, supra, 160 N.J. at 470, 734 A.2d 778; Kelly, supra, 300 N.J.Super. at 265-66, 692 A.2d 552 (citing Rosenberg, supra, 99 N.J. at 325, 492 A.2d 371; Klimko v. Rose, 84 N.J. 496, 503-04, 422 A.2d 418 (1980)); Sanzari v. Rosenfeld, 34 N.J. 128, 142, 167 A.2d 625 (1961); Jenoff, supra, 215 N.J.Super. at 357-58, 521 A.2d 1323.
The common knowledge doctrine has been applied in cases involving uncommon and unexpected patient injuries caused by some application of physical force by the alleged tortfeasors. See, e.g., Chin, supra, 160 N.J. at 470, 734 A.2d 778 (holding that doctrine applied where patient's death was caused by incorrect hook-up of hysteroscope which introduced gas into bloodstream causing fatal embolism); Magner v. Beth Israel Hosp., 120 N.J.Super. 529, 534, 295 A.2d 363 (App.Div.1972), certif. denied, 62 N.J. 199, 299 A.2d 733 (1973) (holding that doctrine applied where patient was burned in flash fire when spark from cauterizing tool ignited alcohol which surgeon had applied to patient's skin); Becker v. Eisenstodt, 60 N.J.Super. 240, 246-47, 158 A.2d 706 (App.Div.1960) (holding that doctrine applied where rhinoplasty patient's nose and upper lip were severely burned and disfigured by nostril pledget apparently soaked in a caustic liquid rather than anesthetic solution before insertion by physician); Steinke v. Bell, 32 N.J.Super. 67, 69-70, 107 A.2d 825 (App.Div.1954) (holding that doctrine applied where dentist engaged to remove patient's lower left molar also extracted or caused removal of her upper right lateral incisor).
Depending upon the identity of a defendant and established hospital protocol or a recognized standard of care, the doctrine has also been applied where a failure to communicate a patient's known dangerous health condition directly to the treating physician or patient causes a delay in treatment and subsequent harm to the patient. Compare, e.g., McKenney, supra, 330 N.J.Super. at 591-93, 750 A.2d 189 (holding that doctrine did not obtain where incontrovertible evidence established that sonographer's conduct in recording physician's suggestion for follow-up study of defective fetus and leaving sonogram and note with unit secretary for perinatologist's review fully comported with hospital protocol and accepted standard of care for sonogram technicians, who had no duty to make certain a reading physician's suggestion was actually implemented by other physicians), with Tramutola v. Bortone, 118 N.J.Super. 503, 510-14, 288 A.2d 863 (App.Div.1972), rev'd in part on other grounds, 63 N.J. 9, 304 A.2d 197 (1973) (holding that doctrine applied where treating physician failed to inform patient that x-rays clearly showed a surgical needle had been left in her lung after a lobectomy, and the omitted communication allowed encapsulation of the needle in scar tissue, causing surrounding tissue rigidity, pain, and impossibility of later removal).
*104 In Jenoff, supra, we held that the common knowledge doctrine obtained in the absence of expert testimony explicitly delineating a radiologist's duty of care in choosing the method by which he communicated his findings of a lung tumor to an orthopaedic patient's treating physicians where there was sufficient evidence from which the jury could determine the applicable standard and whether it had been violated. 215 N.J.Super. at 357-59, 521 A.2d 1323. We noted that defendants' non-expert witness testimony established that regardless of any radiology department protocol, the exigencies of various medical situations required different modes of communicating radiology results as a matter of course, ranging from giving notice of benign findings through regular administrative channels, to the radiologist's immediate and direct notice to the patient's primary care physician of any unusual findings. Id. at 355-57, 521 A.2d 1323. In that context, we concluded that "[m]odes of communication are not so peculiarly within the expertise and knowledge of the medical profession as to necessitate expert testimony," and that the trier of fact should have been permitted to decide on the non-expert testimony whether the radiologist breached his duty of care to effectively communicate the dire discovery by merely issuing an abnormal finding report which was to be affixed to the patient's hospital chart, but became "lost in the shuffle" for several months. Id. at 357, 521 A.2d 1323.
Jenoff does not apply here. There is no issue concerning whether the pathologist used proper means to promptly and effectively communicate a positive finding of cancerous cells to Keller's treating physicians. The pathologist's alleged error was not in his method of communicating his erroneous 1990 diagnosis of Keller's malignant lesion as a benign mole, but rather in his failure to detect the malignancy in the first place. Whether the hospital had any duty of care to establish and "communicate" an institutional policy whereby pathology residents would be obliged to double-check to ensure that their supervising pathologists reviewed the proper slides, or whether those residents would have an independent duty to do so regardless of hospital protocol, are separate matters entirely, and are clearly not within the ken of average jurors for determination under the common knowledge doctrine.
Moreover, although the parties' experts offered differing opinions as to the advisability of implementing "quality assurance" measures to reduce the chance of human error in reading pigmented nevi slides by requiring separate readings by two board-certified pathologists, plaintiff's expert agreed that no such standard of care was required in 1990, or even at the time of trial, and offered no evidence to indicate that pathology residents had any duty of care to oversee their supervising pathologists' work either in choosing slides for review or in rendering proper diagnoses. To the contrary, plaintiff's expert clearly established that supervising pathologists are responsible for double-checking their residents' work, "to let them know if it was done correctly," and plaintiff concedes that "at no time ... [did Alkana] have any responsibility whatsoever" for ensuring that Zinterhofer reviewed the correct slides. Given this uncontroverted evidence that Alkana's conduct fully comported with the hospital's pathology laboratory protocol, and the absence of any expert opinion sufficient to create a jury issue as to whether that protocol violated an established standard of care in 1990 by failing to require double-checking of Zinterhofer's routine laboratory work by any other physician, pathologist or resident, *105 Judge Chaiet did not err in dismissing Alkana from the case and in refusing to submit the issues of Monmouth Medical's and Alkana's liability to the jury under the common knowledge doctrine. See McKenney, supra, 330 N.J.Super. at 593, 750 A.2d 189; Jenoff, supra, 215 N.J.Super. at 357-58, 521 A.2d 1323; R. 1:7-2; R. 2:10-2.
Plaintiff next contends that the trial judge erred by failing to shift the burden of proof from plaintiff to each of the defendants to prove their non-culpability pursuant to Anderson v. Somberg, 67 N.J. 291, 338 A.2d 1, cert. denied, 423 U.S. 929, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975), and Chin, supra, 160 N.J. 454, 734 A.2d 778.
The principle of burden shifting recognized in Anderson is founded on the doctrine of alternative liability and a policy determination that a no cause of action verdict against all possible defendants in a medical malpractice case would work an unacceptable injustice where an unconscious or helpless patient has suffered an injury bespeaking negligence but cannot otherwise recover damages because the plaintiff cannot establish which of the defendants were culpable. See Anderson, supra, 67 N.J. at 298, 338 A.2d 1; Chin, supra, 160 N.J. at 464, 734 A.2d 778; Lyons v. Premo Pharm. Labs, Inc., 170 N.J.Super. 183, 192-93, 406 A.2d 185 (App.Div.), certif. denied, 82 N.J. 267, 412 A.2d 774 (1979). That "radical shifting of burdens... is not undertaken lightly," and has absolutely no application where a plaintiff has already identified and recovered from a culpable defendant via settlement prior to trial. Lyons, supra, 170 N.J.Super. at 192-93, 406 A.2d 185. Were plaintiff's theory viable, then followed to its logical extreme, plaintiff could systematically settle with each defendant, eliminating their exposure to further liability, and ultimately try the case against a lone remaining defendant claiming a burden shift to defendant not only to disprove culpability, but also to prove the negligence of at least one of the settling defendants that plaintiff voluntarily elected to eliminate from the case. Cf. Anderson, supra, 67 N.J. at 312, 338 A.2d 1 (Mountain, J., dissenting) ("The absence of sufficient evidence upon which a verdict might justly rest, coupled with the compulsion to reach a verdict against someone, removes from the case any semblance of rationality.").
Here, plaintiff concedes that Zinterhofer admitted culpability and settled prior to trial, but nevertheless insists that Anderson should have been applied because Zinterhofer's deposition testimony that everything associated with Keller's 1990 slide had been properly labeled and that he had simply "signed out the case incorrectly" was withheld from the jury to avoid confusion. Plaintiff contends that absent that testimony, the requirements of Anderson were met, because "[t]he fact that one party settles does not mean his presence in the case ceases to remain" as "the jury may still evaluate his actions in comparison to Monmouth Medical" in order to allocate fault.
"[T]he law will not assist an innocent plaintiff at the expense of an innocent defendant" by shifting the burden of proof under the Anderson doctrine absent the "narrow set of factual circumstances" described in Anderson and Chin. Chin, supra, 160 N.J. at 465, 734 A.2d 778; Anderson, supra, 67 N.J. at 298, 338 A.2d 1; Blitz v. Hutchinson, 252 N.J.Super. 580, 589, 600 A.2d 485 (App.Div.1991). To shift the burden of proof to medical malpractice defendants under Anderson, a plaintiff is required to show: (1) that he or she is entirely blameless for the injury complained of; (2) that the injury bespeaks negligence on the part of at least *106 one of the defendants; and (3) that all potential defendants who participated in the chain of events causing the injury are represented before the court. Chin, supra, 160 N.J. at 465, 734 A.2d 778; McKenney, supra, 330 N.J.Super. at 597-98, 750 A.2d 189. Only if these requisites are met, is the jury to be instructed that at least one of the defendants must be found liable and that they bear the burden of exonerating themselves from liability. Id. at 598, 750 A.2d 189.
In Anderson, supra, the Supreme Court held that the burden of proof should have shifted to the defendants, a surgeon, hospital, surgical instrument manufacturer, and supplier, to disprove their liability where the faultless plaintiff was injured when the tip of an instrument which broke off during a laminectomy was permanently deposited in the plaintiff's spinal canal, because that injury clearly bespoke negligence on the part of at least one of the defendants, either through negligent manufacture or design, or mishandling or misuse of the instrument. 67 N.J. at 294-95, 302-03, 338 A.2d 1. The Court emphasized that because "all parties had been joined who could reasonably have been connected with that negligence or defect, it was clear that one of those parties was liable, and at least one could not succeed in his proofs." Id. at 303, 338 A.2d 1.
In Chin, supra, the Court reaffirmed application of the Anderson doctrine where "the fact pattern ... mirror[ed] that presented in Anderson," as the unconscious surgical patient was "utterly blameless," suffered a fatal injury bespeaking negligence when the incorrect hook-up of a hysteroscope gas line caused a massive embolism, and all potential defendants were before the court, including the hysteroscope manufacturer, the hospital, the physician, and all three nurses present in the operating room at the time of the procedure. 160 N.J. at 460-61, 465-66, 734 A.2d 778.
By contrast, we recently held in McKenney, supra, that the doctrine did not apply where although an obstetrical patient was undoubtedly without fault, it was arguable that a failure to diagnose her unborn child's spina bifida in time to terminate the pregnancy due to alleged sonogram misdiagnoses and staff communications breakdowns did not necessarily bespeak negligence, (thus also precluding application of the common knowledge doctrine), and that not all defendants were before the court. 330 N.J.Super. at 576-77, 590-94, 598, 750 A.2d 189.
Here, as in McKenney, although Keller was without fault, the facts of her case do not "mirror" those of Anderson, because, as previously noted, she was not precluded from all recovery absent a burden shift, the hospital's and Alkana's conduct did not bespeak negligence sufficient to warrant application of the common knowledge doctrine, and Zinterhofer, having settled prior to trial, was not truly represented before the court, except through the parties' representations for their own comparative negligence damages allocation purposes. Judge Chaiet did not err in failing to charge Anderson.
We briefly address plaintiff's claim regarding the hospital's vicarious liability. In disposing of this claim, we quote a portion of the pre-trial colloquy between counsel and Judge Lehrer.
THE COURT: Your whole case against the hospital is failing to have procedures in effect that would have prevented Dr. Zinterhofer from making whatever mistake he made, right? Zinterhofer is not an employee of the hospital.
[PLAINTIFF'S COUNSEL]: No, there are twowell, I don't know about *107 that. Zinterhofer was the chairman of the department responsible for putting in the policy.
THE COURT: Well, then let's assume that he is an employee of the hospital. He's settled. Haven't you then settled with the hospital?
[PLAINTIFF'S COUNSEL]: I carved out the position that he was in to be against him individually [sic], not as an agent.
THE COURT: How can you do that?
[PLAINTIFF'S COUNSEL]: By specifically reserving on a new release. He has two
THE COURT: So the only way that the hospital would be liable is by respondeat superior and if he's already paid, what did the hospital do wrong?
[PLAINTIFF'S COUNSEL]: No, the hospital has two theories against them as it stands here. One is that Zinterhofer made a mistake.
THE COURT: Right. They've already paid for that mistake.
[PLAINTIFF'S COUNSEL]: Zinterhofer on his own, correct.
THE COURT: But whether he's an employee or not an employee they've already paid for that mistake. So what's the other theory?
[PLAINTIFF'S COUNSEL]: The other theory is that the hospital should have had policies and procedures
THE COURT: Right.
[PLAINTIFF'S COUNSEL]:in effect both before and after and that he and whoever else may have been involved in the hospital in making these decisions failed to put anything in effect. So you have two situations here. You have number one, the hospital's conduct before and then afterwards you have a hospital that had
THE COURT: No, the only issue here is whether the hospital had committed negligence in not having policies and procedures in effect to prohibit whatever happened here, correct?
[PLAINTIFF'S COUNSEL]: Yes.
THE COURT: Let's try the case against Zinterhofer as an employee of the hospital.
[PLAINTIFF'S COUNSEL]: No, no, I
THE COURT: No, listen to me. No, just for the purposes of this argument let's try the case against Zinterhofer as an employee of the hospital. All right? You have a respondeat superior case against the hospital for his negligence, correct? He's admitted his negligence. He's paid for his negligence. That case against the hospital goes away, correct?
[PLAINTIFF'S COUNSEL]: That's correct.
THE COURT: Okay. So the only thing that you possibly have left is the hospital failing to have policies and procedures prior to this and subsequent to this which would have led to somebody calling Ms. Keller and saying, hey, come back.
[PLAINTIFF'S COUNSEL]: That's correct.
We need not reach the merits of plaintiff's vicarious liability claim as plaintiff conceded that the issue was not viable, failed to request any jury charge in regard to the claim and never again raised the issue or presented any relevant proofs during trial. In sum, we conclude that the issue is without merit.
We reach the same conclusion as to the remaining issues regarding discovery and the hospital's status as a specialized pathology services provider. We have carefully scrutinized this extensive record and conclude that both arguments are without *108 merit and do not require further comment. R. 2:11-3(e)(1)(E).
Since we affirm, we need not address the issues on the cross appeal.
Affirmed.
NOTES
[1] Karen Keller is deceased, and this action was prosecuted by Joseph Lucia, individually, and as executor of the estate. For ease of reference, we shall refer to Karen Keller as "plaintiff."