808 A.2d 103 (2002)
354 N.J. Super. 422
Valeska VARGAS, Plaintiff-Respondent,
v.
Victor CAMILO d/b/a Metropolitan Realty Co., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 2002.
Decided October 8, 2002.
*104 Kenneth L. Rose, Passaic, argued the cause for appellant (Jonathan J. Mincis, Teaneck, on the brief).
Keith A. Bachmann, Clifton, argued the cause for respondent (Hetchka & Bachmann, attorneys; Mr. Bachmann, on the brief).
Before Judges PRESSLER, WALLACE, JR. and AXELRAD.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This personal injury, fall-down action was brought by plaintiff Valeska Vargas against her then landlord, defendant Victor Camilo, doing business as Metropolitan Realty. Although defendant did not appear at trial, he was represented by his attorney, who called no witnesses and introduced no evidence. The jury found defendant ninety-five percent liable for plaintiff's injuries and awarded total damages of $70,000, which the court appropriately molded into a judgment for plaintiff. Defendant's ensuing motion for a new trial or remittitur was denied, and he now appeals both from the judgment entered on the jury verdict and the order denying his post-trial motion. We affirm both.
The issues before us are largely procedural and primarily involve the court's decision to proceed to trial despite defendant's absence. We reject the leit motif of defendant's argument, namely, that the trial in his absence constituted a draconian and impermissible application of so-called best practices.[1] In our view, the litigation conduct of both defendant and his attorney amply justified the court's procedural rulings without regard to best-practices innovations.
Specific reference to the procedural history of this case is required. The premises consist of a three-building, multi-family complex containing close to two hundred apartments. Plaintiff, then a tenant, broke her ankle in a fall on a staircase leading from the first floor down to the parking lot. She attributed the cause of the fall to water and debris on the staircase and the handrail coming away from the wall when she reached out for it in an attempt to regain her balance. The premises were maintained by its then superintendent Luis Ruiz, and plaintiff testified at trial that she had repeatedly complained both to defendant and Ruiz about the debris permitted to accumulate on the staircase and the loose handrail. Ruiz had, she testified, appeared at the scene of her fall as she was being taken to the hospital by *105 ambulance, and she had then remonstrated with him for not having responded to her numerous complaints.
Plaintiff filed her complaint in October 1997. Defendant's answer was a general denial accompanied by pro forma affirmative defenses which denied his negligence, attributed the fall to plaintiff's negligence, and asserted that any negligent cause of the fall was attributable to third parties over whom defendant had no control. Form interrogatories were served and answered by both parties. Defendant's answers denied knowledge of the event, asserted that his first notice thereof was service of process in this action, and gave no information at all about anything except to assert, without any further specification or particularization, that "[n]o artificial conditions were present." Although neither set of answers referred to Luis Ruiz, it was represented by plaintiff's counsel that she had fully explained his role both with respect to the premises and this accident in her deposition. We further note that plaintiff had provided all appropriate medical information including the report of her treating physician, a board-certified orthopedist. It appears that she was not asked to be examined by a physician for the defense. See R. 4:19.
Following the completion of discovery, the matter was set down for arbitration pursuant to R. 4:21A. The arbitrator, on December 2, 1998, awarded plaintiff a net recovery of $26,250. Defendant did not make a demand for a trial de novo within thirty days thereafter, and plaintiff accordingly moved for and was granted an order confirming the award. R. 4:21A-6(b)(1) and (3). Defendant did not appear and did not oppose that motion. Plaintiff then docketed the ensuing judgment and proceeded to attempt to enforce it. In May 1998, more than five months after the award, defendant moved for vacation of the judgment and for a trial de novo. The basis of the motion was his claim of excusable neglect in not having timely sought a trial de novo. Defendant asserted that he had expected his insurance carrier to pay the judgment but had learned that the carrier was in liquidation and its trustee had advised him that claims would not be entertained until March 1, 1999. For reasons that do not appear, and despite the dictates of R. 4:21A-6(b), the judge before whom this motion was brought treated the matter only as an application to vacate a default judgment. His ensuing order vacating plaintiff's confirmation judgment recited that "defendant may have a meritorious defense," and that "defendant's neglect in failing to oppose plaintiff's Motion to enter Judgment may be excusable...."
Thereafter, defendant moved for summary judgment dismissing the complaint and plaintiff cross-moved for confirmation of the arbitration award. The motion for summary judgment was denied since plaintiff's prima facie case was patent and, indeed, defendant's motion appears to have been entirely frivolous. The cross-motion for restoration of the arbitration award, asserting that defendant was not entitled to demand a trial de novo five months after the award, was denied on the ground that that issue had already been decided by the judge who had vacated the confirmation judgment.
That brings us to the trial date. Insofar as we can determine from the record, the third scheduled trial date was Monday, April 23, 2001. It was the ninth case listed for trial and was reached on Tuesday afternoon, April 24, 2001. The associate of the firm then representing defendant, who had not been given the file by his office until the previous Wednesday, April 18, 2001, explained to the trial judge, Judge Waks, that defendant was out of the country. He further explained that defendant *106 was his only planned witness and that he had reached out for him the previous week by telephoning his office, which had reported to him that defendant was in the Dominican Republic and was expected back on Friday or Saturday, April 27 or 28. It also appeared that counsel had never himself spoken with defendant at any time and that defendant made a lengthy trip to the Dominican Republic annually. Counsel did, however, verify that defendant had been given notice of the trial date and that he, defendant, had not communicated either with counsel or the court. Although Judge Waks declined to adjourn the trial yet again, he accommodated defendant's situation by agreeing to have plaintiff present her case and then to hold the jury over until the following Monday so that defendant could appear and testify on his own behalf. The prospective jurors were accordingly advised that their service for this case would continue until the following Monday or Tuesday. The jury was then selected, and counsel made their opening statements.
Trial resumed on Wednesday morning, April 25. Plaintiff's treating physician testified, and then plaintiff was called. Both were cross-examined by defense counsel. As a result of plaintiff's testimony, it occurred to defense counsel, with the court's prompting, that if Luis Ruiz could testify for the defense, there would be no need to call defendant, and the trial could then conclude. The problem was that counsel had not known about Ruiz before trial and had therefore made no effort to locate him. Nor did he know if Ruiz was still the superintendent at the apartment complex, and indeed, as he put it, he didn't know if Ruiz was "dead or alive." The judge afforded him, however, an attempt to locate him, and counsel was then apparently able to determine that Ruiz was no longer the superintendent, had moved to an unknown location somewhere in the five boroughs of New York, and that his whereabouts were not immediately determinable. Accordingly, as prearranged, the jury was excused until the following Monday.
On Monday morning, defense counsel advised Judge Waks that defendant had apparently not yet returned from the Dominican Republic and that he had neither heard from him nor knew how to communicate with him. Since he had no other witnesses, the judge instructed counsel to proceed with their summations. He then charged the jury, which returned with the verdict in plaintiff's favor.
The defense thereafter moved for a new trial or remittitur. By that time, counsel had learned that defendant had not returned as expected because of a medical emergency. Counsel argued that denial of the defense adjournment request before trial commenced constituted a denial of due process. He also argued that the original arbitration award should be reinstated because the pretrial decision to permit a trial de novo was erroneous and, alternatively, that if the trial were properly held, the verdict was excessive and should be remitted. We affirm the denial of the post-trial motion substantially for the reasons stated by Judge Waks on the record. We add, however, the following comments.
With respect to the argument that the original arbitration award should have been reinstated, we decline to address the propriety of the original order that vacated the judgment based on the confirmation of the arbitration. Although we do not decide that question, we are constrained to note that the standard for permitting a late demand for a trial de novo is not excusable neglect but rather extraordinary circumstances. See Hartsfield v. Fantini, 149 N.J. 611, 618, 695 A.2d 259 (1997); Wallace v. JFK Hartwyck at Oak Tree, *107 Inc., 149 N.J. 605, 607, 695 A.2d 257 (1997). While it was consequently error for the motion judge to have applied the liberal excusable-neglect standard applicable to the vacation of default judgments, R. 4:50-1(a), we need not determine if the insurer's insolvency constituted extraordinary circumstances, particularly since the record does not indicate when defendant first had notice thereof.
We have reached this conclusion because we are convinced that defendant was foreclosed by the doctrine of judicial estoppel from raising that issue on the new trial motion. The doctrine of judicial estoppel precludes a party from taking a litigation position contrary to that which he had successfully maintained in the same or previous litigation. See, e.g., Richardson v. Union Carbide Indus. Gases, Inc., 347 N.J.Super. 524, 530, 790 A.2d 962 (App.Div.2002); Alampi v. Russo, 345 N.J.Super. 360, 367-368, 785 A.2d 65 (App. Div.2001); Lucia v. Monmouth Med. Ctr., 341 N.J.Super. 95, 103, 775 A.2d 97 (App. Div.), certif. denied, 170 N.J. 205, 785 A.2d 434 (2001). In sum, having sought to set aside the arbitration award, defendant could not then, after the trial de novo for which he so vigorously fought, argue that the trial de novo should not have been granted. As the Supreme Court explained in State Dept. of Law & Pub. Safety v. Gonzalez, 142 N.J. 618, 632, 667 A.2d 684 (1995), judicial estoppel is a doctrine designed to protect the integrity of the judicial process by not permitting a litigant to prevail on an issue and then to seek the reversal of that favorable ruling. To permit this defendant to do so by nullifying the trial he insisted upon and was granted, whether rightly or wrongly, would constitute an assault on the integrity of the judicial process that is neither justifiable nor tolerable.
We now consider the trial in absentia. We are satisfied that Judge Waks' compromise of holding the jury over from Wednesday to Monday so that defendant could appear and testify to have been more than generous and certainly an appropriate response to defense counsel's casual approach to litigation responsibilities. We do not reproach the associate counsel, who was given a file he had never seen before on Wednesday and instructed to try the case on Monday. The fact of the matter is, however, that the case had not been properly prepared for trial, a critical witness had been ignored, no medical evidence had been arranged for, and the client's whereabouts had not been timely ascertained, particularly since his protracted absence from New Jersey was regular and periodic, apparently a fact that counsel was unaware of.
Best practices was not designed to impose new and onerous litigation responsibilities on the bar but rather to require counsel to comply with the responsibilities that the practice of law has always imposed on litigators. Thus, we reject counsel's assertion that prior to best practices the adjournment request would have been routinely, or at least probably, granted. We are satisfied that this is not so. We do not believe that the bar was ever given the license to virtually ignore trial date after trial date or to treat each successive trial date in the desultory and off-hand manner in which the third trial date was treated here. Nor do we believe that litigants were ever given the license to ignore trial date notices by failing to communicate with their attorneys if an appearance problem arose. Calendars must be controlled by the court, not unilaterally by the defense, if civil cases are to be processed in an orderly and expeditious manner. Consequently, we are convinced that denial of the adjournment request on the day of trial was as entirely unexceptionable *108 as a pre-best practices matter as it surely was as a result of best practices.
Defendant raises several claims of trial error which we find to be without merit. He objects to the judge's charge to the jury that administrative regulations respecting the maintenance of multiple dwellings may be regarded as establishing a standard of care and that failure of compliance therewith may be considered as evidence of negligence. That charge was clearly correct. See, e.g., Alloway v. Bradlees, Inc., 157 N.J. 221, 236, 723 A.2d 960 (1999); Costantino v. Ventriglia, 324 N.J.Super. 437, 442, 735 A.2d 1180 (App. Div.1999); certif. denied, 163 N.J. 10, 746 A.2d 456 (2000).
The claim that the verdict was excessive is unsupported by the record. Not only did plaintiff sustain a Weber B fracture of the ankle, described by her orthopedist as a "bad" fracture, but, the orthopedist also opined that as a matter of medical certainty, she will inevitably suffer arthritis of that joint and already suffers and will permanently suffer other sequelae including swelling and pain. Indeed, plaintiff testified that she is employed as a department store sales clerk and that her need to be on her feet for extended periods of time regularly results in those symptoms. The orthopedist also testified that it is more likely than not that plaintiff will require corrective surgery, probably by way of fusion of the ankle bones, in the future.
It is well settled that the quantum of a damages verdict is remediable only if it is so disproportionate to the injury as to be plainly wrong or to shock the conscience of the court. Mahoney v. Podolnick, 168 N.J. 202, 229-230, 773 A.2d 1102 (2001); Baxter v. Fairmont Food Co., 74 N.J. 588, 596, 379 A.2d 225 (1977). The verdict here does not meet that test.
Finally, defendant claims that the court erred in recalling plaintiff and itself questioning her as to whether she was advised of the possible need for surgery. Although we are satisfied that what she was told by the physician was not a foundational prerequisite to his offering his opinion of a likely future need for surgery, any error in that procedure was harmless.
The judgment entered upon the jury verdict is affirmed. The denial of the motion for new trial or remittitur is affirmed.
NOTES
[1] Best practices is the term used to describe the comprehensive rule changes, effective September 2000, designed to improve the efficiency and expedition of the civil litigation process and to restore state-wide uniformity in implementing and enforcing discovery and trial practices.