# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4817-18T4

E.V.,

    Plaintiff-Respondent,

v.

S.V.,

    Defendant-Appellant.

_____

> Submitted April 20, 2020 – Decided May 11, 2020
>
> Before Judges Sabatino and Geiger.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-1371-19.
>
> Mazraani & Liguori, LLP, attorneys for appellant (Jeffrey S. Farmer, of counsel and on the brief).
>
> Central Jersey Legal Services, Inc., attorneys for respondent (Dalya Youssef, on the brief).

PER CURIAM

Defendant S.V.[1] appeals from a May 10, 2019 final restraining order (FRO) granted to plaintiff E.V. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, and a June 21, 2019 order denying his motion to vacate the FRO. We affirm.

We recount the factual allegations from the testimony adduced at the FRO hearing. Plaintiff and defendant were married in September 2016. They have no children together. Plaintiff obtained a March 20, 2019 temporary restraining order (TRO) against defendant based upon allegations that defendant had committed predicate acts of harassment and assault on March 19, 2019. The TRO contained the following complaints of abuse:

> Victim stated she was involved in an argument with her husband in the kitchen. During which, he became angry. Victim stated she began to walk away when he threw a soda can at her, striking her left arm. Victim stated she continued to walk away from him, when defendant pushed her down. She stated she landed on the floor, striking the center of her back on a table.

On March 28, 2019, plaintiff obtained an amended TRO that included alleged prior acts of domestic violence.[2] The TRO was amended a second time

---

[1] We refer to the parties by initials to protect their privacy. R. 1:38-3(d)(10).

[2] The original TRO set forth allegations of assault but did not properly check the box for assault. The amended TRO remedied this oversight.

on April 10, 2019, to include allegations of contempt of the TRO, burglary, and criminal trespass committed on April 2, 2019. Plaintiff alleged that defendant entered the marital home through a kitchen window in violation of the TRO and stole her cell phone, purse, and wallet. Defendant was subsequently arrested.

The case was initially scheduled for a final hearing on April 1, 2019, but plaintiff requested and received an adjournment until April 22, 2019, to retain counsel. Thereafter, plaintiff requested and received a second adjournment until May 10, 2019, due to counsel's scheduled vacation plans.

On April 30, 2019, defendant allegedly drove to plaintiff's sister's house, while plaintiff was present, "giving her the middle finger." Defendant was arrested a second time for this alleged contempt of a domestic violence and a pretrial detention hearing was scheduled for May 10, 2019 at 9:30 a.m., the same morning as the FRO hearing. In a May 8, 2019 letter to the family part judge, defense counsel requested that the FRO hearing "be relisted following [the Criminal Part Judge's] detention decision."[3] The Family Part judge obliged and relisted the FRO hearing from 9:00 a.m. to 1:30 p.m. on May 10.

Defendant was represented by substitute counsel at the FRO hearing, as indicated in an email sent to plaintiff's counsel on May 9. The substitute counsel

---

[3] The Criminal Part judge dismissed the contempt charge without prejudice.

did not request an adjournment of the FRO hearing before the hearing started or when entering her appearance. As a result, the FRO hearing proceeded; plaintiff and defendant were the only witnesses.

During plaintiff's testimony, defense counsel objected because she was unaware of the April 10, 2019 amended TRO. The judge had court staff check to see if defendant was served with the amended TRO, which revealed that defendant had been served with the amended TRO by a New Brunswick police officer on April 10, 2019 at 6:20 p.m. The judge concluded there were no due process issues.

The court printed a copy of the amended TRO for defense counsel and afforded counsel time to review it. The judge told counsel to inform the court officer when she was ready and the hearing would continue, but he was not going to adjourn it. Defense counsel replied: "Okay. That's fine. Thank you." When asked if that was fair, defense counsel replied, "Yes, Judge." When counsel advised she was ready, the hearing recommenced without further objection. Counsel acknowledged on the record that she had reviewed the amended TRO and was "all set" to proceed.

Plaintiff testified the parties were having an argument on March 19, 2019, regarding what would happen to the marital home in a divorce. She stated that

defendant threw a nearly full can of soda at her, which struck her left arm. As she was walking away, defendant pursed her and pushed her down, causing her to fall and strike her back on an end table in the living room. When she screamed, plaintiff's mother and sister came in the room and helped pick her up from the floor.

The argument continued with defendant yelling at her. During the episode, he accused plaintiff of cheating and called her names, all of which plaintiff recorded on her cell phone.[4] Defendant called the police; when they arrived plaintiff played the recording for them, which included defendant admitting that he had hurt her. Plaintiff testified that she experienced arm and back pain and went to the doctor "first thing in the morning" the following day. The doctor advised her to take off from work.

Plaintiff further testified that on April 2, 2019 at 2:00 a.m., defendant broke into the marital home through the kitchen window while plaintiff was sleeping. When she screamed, defendant ran out of the house through the kitchen door with her purse and cell phone. Plaintiff called the police, whom

---

[4] Plaintiff was unable to play the recording during the hearing because it was recorded on the cell phone that defendant allegedly stole on April 2, 2019.

A-4817-18T4

observed the open kitchen window and took fingerprints. Defendant was arrested the next day.

Plaintiff explained defendant's prior history of domestic violence. She recounted an incident in April 2018, when defendant punched walls and threw a chair, causing the parties to separate for a week. Plaintiff stated she was not aware she needed to include the prior incident when she first applied for the TRO.

Plaintiff also testified that on April 30, 2019, while driving to her sister's house, defendant was there and gave her the middle finger. This "terrified" her. Plaintiff stated she is afraid of defendant because he has previously hurt her.

During plaintiff's cross-examination, defense counsel requested an adjournment to obtain a transcript of the Criminal Part's pretrial detention hearing that morning related to the April 30, 2019 incident that was later dismissed. The Family Part judge concluded the transcript was irrelevant because the criminal case was a separate matter with different standards and was not binding or controlling in the domestic violence case. The judge took judicial notice of the Criminal Part order denying pretrial detention and dismissing the contempt charge. However, he stated it could not be used to impeach plaintiff because it was not a prior inconsistent statement, and that principles of collateral

estoppel and res judicata did not apply since plaintiff was not present, and did not testify, at the pretrial detention hearing.

When asked during cross-examination whether she was fabricating her allegations for immigration purposes, plaintiff stated "there's was no way for [her] to get deported." She denied ever threatening to hurt herself for such purposes, stating she would never try anything like that. She later admitted, however, making a statement to defendant in March 2018 that she would do anything—including self-inflicted wounds—if she had to. During redirect, plaintiff explained that she made the statements about self-inflicting wounds because she was "really depressed," but repeatedly denied she would ever do so.

During his testimony, defendant admitted that he threw an unopened soda can while the parties were arguing on March 19, 2019, but claimed he threw it at the sink or the floor, not at plaintiff. Instead, he stated plaintiff left the kitchen and then he heard a loud bang. In the living room, he saw plaintiff on the floor crying hysterically for her mother. Defendant claimed he did not know how she fell since he was not present but alleged that she must have hurt herself on purpose. Defendant stated he then walked outside to smoke and call the police. He denied pushing plaintiff.

7

Defendant testified that plaintiff said to him that she will do whatever she needs to do to keep the house and her citizenship. He claimed plaintiff had a work permit that had to be renewed every two years and that she "was really scared about her immigration status." Defendant testified that plaintiff said, "she would do anything necessary, including hurting herself, using my own firearms, and hurting herself, and blame me for it, because she knows she can get her citizenship in that way." Notably, defendant did not testify about the criminal trespass and burglary incident that also formed the basis for the first contempt allegation.

The Family Part judge issued an oral decision following closing arguments. The judge noted plaintiff alleged predicate acts of simple assault, contempt of a court order, burglary, criminal trespass, and harassment.

As to credibility, the judge found plaintiff to be "an average witness." Plaintiff provided detailed testimony and "stood up well under cross-examination." She made good eye contact but was somewhat evasive. Likewise, the judge found defendant to be an "average witness" who was "clear in his testimony" and provided helpful context. While he described it a" close call," the judge found plaintiff was a "slightly better" witness.

A-4817-18T4

The judge then analyzed the alleged predicate acts. He found defendant more credible than plaintiff as to the assault allegation, concluding he did not attempt to cause injury or menace plaintiff and did not intend to hit plaintiff with the soda can. The judge also found defendant did not attempt to injure plaintiff by pushing her, noting that defendant called the police on that occasion. He nevertheless found defendant harassed plaintiff by throwing the soda can and using "offensively coarse language," concluding both actions were likely to cause annoyance or alarm and were done with the purpose to harass.

The judge found plaintiff's testimony regarding the April 2, 2019 incident to be credible and determined that defendant committed the predicate acts of criminal trespass and burglary by entering plaintiff's residence when he was permitted to do so, and taking plaintiff's wallet, purse, and cell phone. The judge further determined that defendant committed the additional predicate act of contempt of a domestic violence order by returning to the plaintiff's residence after being served with the TRO.

As to the need for a FRO to protect plaintiff from immediate danger or to prevent further abuse, the judge found plaintiff's testimony credible that she was afraid of defendant, had anxiety, and was upset by his actions. The judge concluded plaintiff needed the FRO "primarily to protect her from any anxiety,

9

. . . mental distress[,] and anguish in the future." The judge entered a May 10, 2019 FRO in favor of plaintiff.

On May 19, 2019, defendant moved to vacate the FRO and reopen the FRO hearing based on the trial court's refusal to grant an adjournment. Defendant claimed he was thereby denied a meaningful opportunity to defend the allegations contained in the amended TRO with counsel of his choosing.

The court issued a June 19, 2019 oral decision denying the motion. The judge noted defendant was represented at the FRO hearing by substitute counsel, who did not request an adjournment of the May 10, 2019 hearing. He concluded defense counsel's letter, requesting that the final hearing be held after the detention hearing, was not a request for an adjournment to a later date. Further, the judge indicated he would have denied a request for a postponement to a later date, noting that domestic violence cases must be heard expeditiously. He also explained that what happens to the criminal charge "has nothing to do with" the domestic violence case. The judge noted that domestic violence cases are summary proceedings without discovery in which a preponderance of the evidence standard applies. This appeal followed.

Defendant raises the following points for our consideration:

POINT I

THE COURT BELOW ABUSED ITS DISCRETION IN NOT GRANTING DEFENDANT'S REASONABLE REQUEST FOR AN ADJOURNMENT, AND, AS A RESULT, HIS DUE PROCESS RIGHTS WERE VIOLATED AND THE MATTER MUST BE REMANDED FOR A NEW HEARING.

POINT II

[THE TRIAL COURT'S] FINDINGS ARE INADEQUATE TO ESTABLISH THAT THE FRO WAS NECESSARY TO PROTECT PLAINTIFF FROM IMMEDIATE DANGER OR TO PREVENT FURTHER ABUSE (Not Raised Below).

We affirm substantially for the reasons expressed by the Family Part judge in his May 10, 2019 oral decision granting the FRO and his June 19, 2019 oral decision denying defendant's motion to vacate the FRO. We add the following comments.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). When reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare, 154 N.J. at 411-12). Deference is particularly appropriate when the

evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears their testimony obtains a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)); see also Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Defendant argues the trial court abused its discretion by not granting an adjournment of the final hearing. We disagree.

Our courts have long and consistently held to the general standard of review that an appellate court will reverse for failure to grant an adjournment only if the trial court abused its discretion, causing a party a "manifest wrong or injury." State v. Hayes, 205 N.J. 522, 537 (2011) (citation omitted). "Calendars must be controlled by the court, not unilaterally by [counsel], if civil cases are to be processed in an orderly and expeditious manner." Vargas v. Camilo, 354 N.J. Super. 422, 431 (App. Div. 2002).

In considering whether the court mistakenly applied its discretion, we examine the proceeding in question and the reason defendant sought an adjournment. As the court was conducting a FRO hearing, it was required to determine if defendant had committed an act of domestic violence. Domestic violence is a civil offense; defendants are not entitled to full criminal procedural protection. J.D. v. M.D.F., 207 N.J. 458, 474 (2011). Nonetheless, due process allows litigants a meaningful opportunity to defend against a complaint in domestic violence matters, which would include the opportunity to seek legal representation, if requested. Franklin v. Sloskey, 385 N.J. Super. 534, 540-41 (App. Div. 2006).

We discern no abuse of discretion by the trial court. Defense counsel requested that the final hearing "be relisted following [the Criminal Part Judge's] detention decision." The detention hearing was conducted in the morning. The final hearing was conducted in the afternoon after the pretrial detention hearing was completed. Defense counsel was aware of the decision not to detain defendant yet did not request a further postponement before the final hearing started.

Instead, the final hearing commenced, and defense counsel did not object until she claimed, during plaintiff's cross-examination, that she had not seen the

13

amended TRO. The trial court printed a copy of the amended TRO for counsel, reasonably allowing her time to review it during a break in the hearing, and told her to advise a court officer when she was ready to continue. Defense counsel replied: "Okay. That's fine. Thank you." When asked if that was fair, defense counsel replied, "Yes, Judge." When counsel advised she was ready, acknowledged she had reviewed the amended TRO, and was "all set" to proceed, the hearing recommenced without further objection.

Moreover, on April 10, 2019, defendant was served with the amended TRO that alleged he committed predicate acts of criminal trespass, burglary, and violation of the existing TRO. He was thus aware of plaintiff's allegations arising from the April 2, 2019 incident for a full month before the final hearing. Notably, the April 30, 2019 alleged violation of the TRO was not found to be a predicate act and was not considered by the trial court in determining whether a FRO was necessary.

Lastly, defendant was represented by counsel of his choice. Counsel was afforded an opportunity to review the amended TRO and indicated she was ready to proceed. We discern no abuse of discretion, much less manifest wrong or injury. Defendant's right to due process was not violated.

The PDVA accords protection to victims of "domestic violence," a term which the Act defines "by referring to a list of predicate acts" enumerated in N.J.S.A. 2C:25-19(a). J.D., 207 N.J. at 473. Harassment, burglary, criminal trespass, and contempt of a domestic violence order all constitute predicate acts of domestic violence. N.J.S.A. 2C:25-19(a)(11)-(13), (17).

Before a FRO may issue, the court must engage in a two-prong analysis and make specific factual findings and legal conclusions. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, the court must determine, "in light of the previous history of violence between the parties," id. at 125 (quoting Cesare, 154 N.J. at 402), "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Ibid.

Upon finding the commission of a predicate act, the court must then determine if a FRO is necessary to protect "the victim from an immediate danger or to prevent further abuse." Id. at 127; accord J.D., 207 N.J. at 476. This second determination, like the first, "must be evaluated in light of the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse," as well as "whether immediate danger to the person or property is present." Silver, 387 N.J. Super. at 124

15

(quoting Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)(1)-(2))).

The trial court found that defendant committed the predicate acts of harassment, burglary, criminal trespass, and contempt of a domestic violence order. The court's credibility determinations, factual findings, and legal conclusions are amply supported by substantial credible evidence in the record. Each of those offenses are predicate acts enumerated in N.J.S.A. 2C:25-19(a). The court correctly found that first prong under Silver was satisfied.

For similar reasons, we reject defendant's contention that the judge's findings did not establish that a FRO was necessary to protect plaintiff from further abuse. Defendant committed four predicate acts of domestic violence that occurred in two separate incidents.[5] The criminal trespass and burglary occurred at 2:00 a.m. while plaintiff was home, after defendant had been served with the TRO. Based upon these incidents, the judge found plaintiff was afraid of defendant and a FRO was necessary "to protect her from any anxiety, . . . mental distress and anguish in the future." We are satisfied that the evidence supports the judge's finding that a FRO is necessary to protect plaintiff "from an

_____

[5] Although plaintiff complained of a prior history of domestic violence, the trial court did not find that defendant had committed prior acts of domestic violence.

immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)).  Accordingly, the second Silver prong was also satisfied.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION