# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1382-20

J.E.B.,[1]

    Plaintiff-Respondent,

v.

C.B.,

    Defendant-Appellant.

_____

Submitted January 18, 2022 – Decided January 31, 2022

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FV-19-0122-20.

Douglas J. Del Tufo, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the parties' privacy. R. 1:38-3(d)(10).

Defendant C.B., the son of plaintiff J.E.B., appeals the entry of a December 10, 2020 final restraining order (FRO) pursuant to the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35. Defendant argues the judge erred in refusing to grant his request to adjourn the trial to obtain necessary witnesses. He also asserts the judge erred in drawing an adverse inference against him for choosing not to testify during the FRO hearing. We disagree and affirm.

I.

We recount the factual allegations from the testimony adduced at the FRO hearing. Plaintiff obtained a temporary restraining order (TRO) against defendant on August 30, 2019, based upon allegations that defendant committed predicate acts of assault, terroristic threats, and criminal restraint the day prior. The TRO contained the following complaints of abuse:

> [Plaintiff] . . . was brought to police headquarters by a family member to report that her son [defendant] and his girlfriend [A.S.] tried to kill her by choking her and putting a knife to her back. The [plaintiff] . . . stated that this assault/incident occurred yesterday in her residence . . . . [The officer] observed injuries to the [plaintiff's] neck and back. An emergency room doctor confirmed that the [plaintiff's] injuries are consistent with someone grabbing the [plaintiff's] neck and putting a knife to her back. [Plaintiff] was admitted to the Newton Medical Center under protective care due to the nature of the incident.

Defendant was subsequently arrested and was charged with criminal offenses arising out of the August 29, 2019 incident that led to the filing of the TRO.

The case was initially scheduled for a final hearing on September 12, 2019, but plaintiff did not appear, resulting in the issuance of an extended TRO.[2] More than a year later, at defendant's request, the court entered an order on October 2, 2020, re-scheduling the FRO hearing for October 22, 2020. Plaintiff failed to appear again. The judge rescheduled the hearing for November 5, 2020, and ordered the Hopatcong Police Department "to personally serve . . . plaintiff this order" otherwise "[f]ailure to appear may result in a dismissal of this case."

Plaintiff appeared on November 5, 2020, but requested and received an adjournment until November 19, which defendant consented to, in order to retain counsel. On November 19, plaintiff appeared but sought another adjournment because she had not yet retained counsel. The judge granted her request and ordered the case be tried or dismissed on December 10, 2020.

---

[2] There is a discrepancy as to the FRO hearing's originally scheduled date. Defendant's appendix only includes the amended TRO, which provides the FRO hearing was scheduled for September 12, 2019. However, each continuance order contained in defendant's appendix states the FRO hearing was "originally scheduled on" September 5, 2019. Defendant's appendix does not contain the original TRO nor the reason for the discrepancy, and they are not germane to our decision.

A-1382-20

The FRO hearing proceeded on December 10, 2020, via Zoom. Both parties were represented by counsel. At the commencement of the proceeding, defendant requested an adjournment for "three week[s] to a month." Defense counsel explained that after receiving the grand jury transcript in the criminal action, he found "major inconsistencies" between plaintiff's domestic violence allegations and "what is in the grand jury transcripts," requiring the police officer involved to be subpoenaed to testify. The judge denied defendant's adjournment request, and the FRO hearing proceeded.

At the onset of the hearing, the judge decided "to take some testimony from [plaintiff] to assess competency in order to determine whether or not the [c]ourt should appoint a [Guardian Ad Litem] on her behalf in proceeding in the matter or not." Following direct and cross-examination of plaintiff on this preliminary issue, the judge determined plaintiff was competent to testify and stated:

> I'll note that there is a separate criminal matter that is pending. That is separate and apart from this proceeding. The standard of proof is different. The State is the plaintiff in that application, in that matter and whether or not that matter proceeds is independent of this civil proceeding in which the relief that is being sought is an order of protection.
>
> And so[,] for those reasons, we're going to proceed with the hearing today. I'm satisfied that there

4

has been <u>an adequate opportunity</u> by the defense to prepare for this matter. . . .

. . . .

In light of the matter having been the alleged predicate act of criminal restraint, assault, and terroristic threats having occurred well over a year ago, August 29[], 2019, the defendant has had <u>ample opportunity</u> to prepare this matter. I understand that there's a pending criminal matter. He has a right, certainly if he wishes, to provide testimony in this matter, but that would be his choice with the assistance of his attorney to decide. And the [c]ourt certainly would note that he may elect not to in light of the criminal charge, but that is his decision to make. And the [c]ourt is not going to hold this matter up until the determination is made either on the motion in the criminal matter or ultimately on how that matter will proceed. Again, two separate matters.

[(emphasis added).]

Plaintiff testified that on August 29, 2020, defendant and A.S., along with her other son and his wife, resided in her household. On that day, plaintiff testified defendant "grabbed" her throat after an argument she had with A.S. Plaintiff also stated that A.S. "stuck [her] with a knife . . . [i]n the back," in the parlor. According to plaintiff, she experienced pain and has a scar from the knife stabbing.

A-1382-20

Later that day, plaintiff testified defendant "was fighting" with her in the living room,[3] screamed at her, "grabbed [her] throat and started pressing in on it" to the point she "couldn't breathe." Plaintiff also stated defendant told her, "I'm going to kill you." Plaintiff also described a prior incident, which occurred the week before, when defendant argued with her and injured her hand. She claimed defendant "pushed down and squeezed" her hand but plaintiff did not seek medical treatment.[4] Plaintiff testified she is "scared for [her] life" because defendant "might come any time." No other witnesses testified, and defendant elected not to testify on his own behalf.

After summarizing the testimony, the judge found plaintiff "testified credibly" and observed plaintiff recalled the incident wherein defendant "had come into the house furiously." In her decision, the judge noted there was "no countervailing or contradictory evidence presented either through another party, another witness, or the defendant himself." The judge further found defendant committed the predicate acts of assault, terroristic threats, and criminal restraint.

---

[3] The terms "parlor" and "living room" appear to be used interchangeably in the record.

[4] The TRO states plaintiff reported her fingers on her left hand were "broken" a week prior by defendant, and "she was not able to contact the police."

N.J.S.A. 2C:25-19; N.J.S.A. 2C:12-1; N.J.S.A. 2C:12-3(a) and (b); and N.J.S.A. 2C:13-2. Given the nature of defendant's conduct and the parties' history, both prongs were met under Silver v. Silver.[5] In addition to granting the FRO, the judge fined defendant $50.

Now on appeal, defendant raises the following points:

> I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR AN ADJOURNMENT TO OBTAIN NECESSARY WITNESSES.

> II. THE TRIAL COURT ERRED IN DRAWING AN ADVERSE INFERENCE AGAINST DEFENDANT FOR ELECTING NOT TO TESTIFY DURING THE FRO HEARING.

## II.

This court must apply "a deferential standard of review[] in recognition of the Family Part's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Theme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Amzler v. Amzler,

---

[5] 387 N.J. Super. 112, 125-27 (App. Div. 2006) (holding that to qualify for an FRO, a plaintiff must prove by a preponderance of the evidence that a predicate act of domestic violence occurred and then establish if an FRO is necessary to prevent further domestic violence).

463 N.J. Super. 187, 197 (2020) (quoting Cesare, 154 N.J. at 412). "Reversal is warranted only if the findings were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Therefore, the Family Part's factual findings bind the appellate court "if they are 'supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare, 154 N.J. at 412). Legal conclusions, on the other hand, are subject to a de novo review. Ibid. Defendant argues the judge abused her discretion by not granting an adjournment of the final hearing. We disagree.

Our courts have long and consistently held to the general standard of review that an appellate court will reverse for failure to grant an adjournment only if the trial court abused its discretion, causing a party a "manifest wrong or injury." State v. Hayes, 205 N.J. 522, 537 (2011) (citation omitted). "Calendars must be controlled by the court, not unilaterally by [counsel], if civil cases are to be processed in an orderly and expeditious manner." Vargas v. Camilo, 354 N.J. Super. 422, 431 (App. Div. 2002).

In considering whether the court mistakenly applied its discretion, we examine the proceeding in question and the reason defendant sought an

8

adjournment. As the court conducts an FRO hearing, it is required to determine if defendant committed an act of domestic violence. A case filed under the Act is a civil proceeding; civil defendants are not entitled to full criminal procedural protection. See J.D. v. M.D.F., 207 N.J. 458, 474 (2011). Nonetheless, due process allows litigants a meaningful opportunity to defend against a complaint in domestic violence matters. Franklin v. Sloskey, 385 N.J. Super. 534, 540-41 (App. Div. 2006).

Concurrent with this right is the trial court's discretion to exercise control over the mode and order of presentation of witnesses to avoid wasting time. N.J.R.E. 611(a)(2). Therefore, "[a] trial judge's decision not to . . . adjourn a trial to permit an unavailable witness to testify will not be disturbed on appeal absent an abuse of discretion." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 611 (2021-2022).

Here, the judge did not abuse her discretion in denying defendant's request to adjourn the FRO hearing on December 10, 2020. Defendant argues the Act, the New Jersey Domestic Violence Procedures Manual (NJDVP Manual), and case law required the Family Part to grant his adjournment request because he did not have adequate time to prepare his defense in light of testimony in the grand jury transcript. However, defendant misinterprets the NJDVP Manual,

which states "[t]he court <u>may</u> grant an adjournment . . . for the purpose of . . . securing witnesses, . . . unless the delay would create an extreme hardship on the other party."  Supreme Court of N.J. & Attorney Gen. of N.J., State of New Jersey Domestic Violence Procedures Manual (NJDVP Manual) (Oct. 9, 2008), § 4.10.4, available at https://www.njcourts.gov/courts/assets/family/d vprcman.pdf (emphasis added).  Defendant asserts there was no risk to plaintiff in liberally granting his adjournment request.  Nevertheless, the NJDVP Manual does not obligate the trial court to grant an adjournment absent an adverse impact to the other party and only forbids the granting of an adjournment if "the delay would create an extreme hardship on the other party."  NJDVP Manual § 4.10.4.

Additionally, defendant references Section 4.12 of the NJDVP Manual, which states, "[d]ue process requires that the judge make an inquiry as to whether the defendant needs additional time to prepare in light of the amended complaint.  A brief adjournment may be required if the judge determines that the defendant did not have adequate notice and needs time to prepare."  Here, the record shows the judge conducted the appropriate inquiry and found defendant "had ample opportunity to prepare this matter" because "the alleged predicate act . . . occurred well over a year" earlier, on August 29, 2019.  When

A-1382-20

the TRO was granted, extended, and the FRO hearings were postponed, defendant was duly served with notice each time and he was represented by counsel. Moreover, "it was at the request of the defendant that the matter was listed for trial." Because of defendant's own volition, we conclude he had ample notice to prepare his defense with the assistance of counsel for the FRO hearing.

Defendant also claims the facts here are like those in H.E.S. v. J.C.S., 175 N.J. 309, 317-18 (2013). We disagree. In H.E.S, the plaintiff did not include any prior acts of domestic violence in her complaint before introducing them at the final hearing, leaving the defendant with no prior notice of certain acts plaintiff claimed supported her entitlement to an FRO. Ibid. Consequently, the trial court granted a one-day continuance in order for defendant to prepare with counsel. Id. at 318. The defendant then requested another adjournment seeking additional preparation time and "to subpoena police officers who had been called to the parties' home." Ibid. The court denied the second adjournment request, and the Supreme Court ultimately reversed and held the denial violated defendant's due process rights because twenty-four hours was insufficient time to adequately prepare for "an incident of domestic violence not contained in the complaint." Id. at 324.

11

In addition, the Court also held service of the complaint on the defendant less than twenty-four hours before the hearing violated due process because he did not receive adequate time to prepare, and the case could have been adjourned within the ten-day requirement of N.J.S.A. 2C:25-29(a).  See ibid.; see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 319 (App. Div. 2021) (holding notice of an FRO hearing less than twenty-four hours earlier to be inadequate time to prepare in violation of due process).

Here, defendant had an abundance of time to prepare for the hearing.  He offers no explanation for his failure to subpoena the police officer for a trial that had been adjourned numerous times at plaintiff's request.  The acts of domestic violence occurred on August 29, 2019, and plaintiff filed a domestic violence complaint against defendant on August 30, 2019.  The final hearing did not take place until sixteen months later.  Unlike the hearings in H.E.S. and D.M.R., defendant had over a year to prepare his defense.  In contrast to H.E.S., plaintiff in the matter under review did not allege any incidents not contained in the complaint, giving defendant adequate time to prepare a defense.

Moreover, defendant also requested the matter be listed for trial on October 2, 2020, a year after the being served with amended complaint, whereas the defendants in H.E.S. and D.M.R. were served on short notice.  Because

12

defendant was not met with any surprises and had adequate time to prepare, the judge properly reasoned the police officer defendant claimed he needed to subpoena was not an essential witness. Had the officer been a key witness, defendant would have subpoenaed him or her prior to receiving the grand jury transcripts and made him or her available to testify.[6] See N.J.R.E. 611(a)(2); Biunno et al., cmt. 1 on N.J.R.E. 611. In addition, defendant simply generally argues the police officer's testimony would have made a difference, but defendant offers no evidence establishing that would have been the case.

Defendant also maintains he was entitled to the adjournment because "the trial court bent over backward[s] adjourning the matter three times to assure [p]laintiff's right to counsel," but "totally ignored [his] right to secure a witness." He also claims plaintiff's adjournments were "delaying tactics." However, plaintiff's and defendant's rights are independent of each other. "[T]he matter was initially placed under an extended TRO because . . . plaintiff did not appear." But, if a plaintiff, like here, does not appear for a final hearing, then "the matter shall be rescheduled," as it was on November 12, 2019, and October 22, 2020. NJDVP Manual § 4.9.6.

---

[6] The record does not indicate when defendant received the grand jury transcripts.

Saliently, the October 22, 2020 order stated the matter would be tried or dismissed at the next scheduled hearing date. The judge then adjourned the matter on November 5 and 19, 2020, at plaintiff's request, to retain counsel, a due process right she is entitled to, not a delay tactic. The trial judge again noted the case "would be tried or dismissed if . . . plaintiff was not ready to proceed" on December 10, 2020.

Lastly, defendant was represented by counsel of his choice. Counsel was afforded an opportunity to review the pleadings. We discern no abuse of discretion, much less manifest wrong or injury. Defendant's right to due process was not violated.

III.

Defendant next argues the judge erred by making an adverse inference against him based on his decision not to testify at trial because there was a pending criminal matter against him at the time.[7] In her decision, the judge stated defendant "chose not to testify." The judge went on to say, "I will draw a negative inference that had [defendant] testified in this regard, the testimony he would have offered would have been adverse to his interest."

---

[7] Defendant did not include any documentation of a pending criminal matter in his appendix. We cannot discern from the record whether defendant had been arrested, charged, or indicted at the time of the FRO hearing.

A-1382-20

It is well-established that an individual invoking the Fifth Amendment "privilege against self-incrimination may do so 'in any . . . proceeding, civil or criminal, . . . where the answers might tend to incriminate him in future criminal proceedings.'" State v. P.Z., 152 N.J. 86, 101 (1997) (first alteration in original) (quoting Minnesota v. Murphy, 456 U.S. 420, 426 (1984)). "When a party in a civil matter asserts the privilege against self-incrimination, the fact-finder may draw an adverse inference of guilt." N.J. Div. of Child Prot. & Perm. v. S.K., 456 N.J. Super. 245, 266-67 (App. Div. 2018) (citing Attor v. Attor, 384 N.J. Super. 154, 165-66 (App. Div. 2006)); see also State, Dep't of Law & Pub. Safety v. Merlino, 216 N.J. Super. 579, 587-88 (App. Div. 1987) (holding a court may draw an adverse inference where a party refuses to testify in a civil matter).

In S.K., we held that "a Family Part [j]udge may not draw an adverse inference of culpability against a defendant who invokes his [or her] right against self-incrimination to refuse to testify at a Title 9 fact-finding hearing" when related criminal charges are pending. 456 N.J. Super. at 251, 271-72, 274. In reaching this decision, we highlighted the county prosecutor's ability to use "a defendant's self-incriminating statements as part of the State's case in a criminal trial" stemming from the incident that gave rise to a Title 9 complaint.

15

<u>Id.</u> at 264 (citing <u>R.</u> 5:12-6). Upon written request, the Division of Child Protection and Permanency (Division) must release the reports and records to the "police or other law enforcement agency." <u>Id.</u> at 262-64 (quoting N.J.S.A. 9:6-8.10a(b)(2)). We noted the plain text of Title 9 "does not authorize the Family Part to take any action to prevent the Division from the county prosecutor with a transcript from the fact-finding hearing containing a defendant's self-incriminating testimony." <u>Id.</u> at 264-65 (citing N.J.S.A. 9:6-8.10a and -8.10b).

In contrast, the Act provides parties with procedural safeguards against the use of a party's testimony in a domestic violence trial in related criminal proceedings. The Act states that:

> If a criminal complaint arising out of the same incident which is the subject matter of a complaint brought [under the Act] has been filed, testimony given by the plaintiff or defendant in the domestic violence matter shall not be used in the simultaneous or subsequent criminal proceeding against the defendant, other than domestic violence contempt matters and where it would otherwise be admissible hearsay under the rules of evidence that govern where a party is unavailable. At [an FRO] hearing[,] the standard for proving the allegations in the complaint shall be by a preponderance of the evidence.
>
> [N.J.S.A. 2C:25-29(a).]

A-1382-20

The trial court in S.K. explicitly drew an adverse inference against the defendant when he refused to testify and "relied on defendant's silence to draw an adverse inference of culpability to corroborate the child's hearsay statements." 456 N.J. Super. at 274. Here, defendant argues that the judge took his silence into account when making her decision and "drew a negative inference from that silence." In S.K., the defendant had already been arrested, charged with multiple related crimes, and was incarcerated when the fact-finding hearing occurred. Id. at 271. The defendant's testimony in the Title 9 trial could have been used against him in the criminal proceeding. The lack of procedural safeguards made honoring the S.K. defendant's right against self-incrimination paramount and rendered the trial court's adverse inference improper.

In the matter under review, defendant is entitled to invoke his right against self-incrimination under the Fifth Amendment and N.J.R.E. 503. Moreover, defendant could have testified at the FRO hearing, and his testimony could not have been used affirmatively against him in the "pending criminal matter" pursuant to the Act. Therefore, as the finder of fact, the judge did not err in drawing an adverse inference against defendant based on his decision not to testify. Id. at 266-67 (citing Attor, 384 N.J. Super. at 165-66).

Furthermore, an adverse inference is only permitted where there is additional evidence to support an adverse finding. Merlino, 216 N.J. Super. at 587. In S.K., the only evidence against defendant came from hearsay testimony. 456 N.J. Super. at 251. And, the trial court's factual findings rested on the adverse inference drawn from the defendant's silence as "substantive evidence to corroborate" the hearsay testimony. Ibid. But here, the judge found the FRO was necessary based on substantive evidence, including plaintiff's credible testimony, and the judge's decision was not based solely on defendant's refusal to testify. We discern no error by the judge in drawing an adverse inference against defendant and finding plaintiff satisfied her burden of proof by a preponderance of the credible evidence because defendant's constitutional and statutory rights under the Act were not violated and are preserved.

To the extent we have not already addressed them, any additional arguments defendant raises on appeal lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1382-20